**Certiorari Granted, July 1, 2009, No. 31,739**
**Certiorari Quashed, June 2, 2010**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2010-NMCA-064**

**Filing Date:    May 11, 2009**

**Docket No. 27,971**

**STATE OF NEW MEXICO,**

    **Plaintiff-Appellee,**

**v.**

**PATRICK MARQUEZ,**

    **Defendant-Appellant**.

**APPEAL FROM THE DISTRICT COURT OF QUAY COUNTY**
**Ricky D. Purcell, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Ralph E. Trujillo, Assistant Attorney General
Albuquerque, NM

for Appellee

Albright Law & Consulting
Jennifer R. Albright
Albuquerque, NM

for Appellant

**OPINION**

**ROBLES, Judge.**

**{1}**    Patrick Marquez (Defendant) entered a conditional plea of guilty to two counts of homicide by a vehicle and three counts of great bodily injury by a vehicle, contrary to NMSA 1978, Section 66-8-101(C) (2004). The plea was conditioned upon the filing of an appeal on the issue of whether there is such a charge as party to the crime of homicide by a vehicle and great bodily injury by a vehicle. We affirm.

## I. BACKGROUND

**{2}** On August 22, 2005, the State filed a criminal complaint in the magistrate court against Defendant, alleging that he caused the deaths of two individuals and the great bodily harm of five others while driving a vehicle under the influence of alcohol, contrary to Section 66-8-101(C). As developed later, the charges against Defendant were based on information indicating that, on the night of August 19, 2005, Defendant was a passenger in Leo Lucero's vehicle when an accident occurred that left two people dead and five people injured. The State alleged that, on the night in question, Defendant and Lucero were drinking together in a bar, and Lucero became so intoxicated that they were refused service. They then went to another bar together. There, too, they were eventually refused service. It was then that Defendant bought a twelve-pack of beer, and suggested that Lucero should drive the two men in Lucero's vehicle and continue partying. Not long after being on the road, the vehicle the two men were in rear-ended a van that had thirteen people on board. The accident resulted in the deaths of two and great bodily injury of five occupants of the van. After the accident, seven open beer cans were found in Lucero's vehicle. Lucero had a breath alcohol content of .19. Defendant made statements that he knew Lucero was intoxicated at the time of the accident; that he should have taken Lucero's keys away; and that he should have avoided the trip.

**{3}** A criminal information was filed in the district court on October 5, 2005, charging Defendant with two counts of homicide by vehicle and five counts of great bodily injury by vehicle, contrary to Section 66-8-101(C). All seven counts were brought under the parties to a crime statute in the Motor Vehicle Code. NMSA 1978, § 66-8-120 (1978). Defendant filed a motion to dismiss in the district court, arguing that he was not the driver, but merely a passenger; that he did not encourage Lucero; and his mere presence could not support a charge of being an accessory to the crime because the crime requires the defendant to be actually operating the vehicle. After a subsequent hearing, the district court denied the motion. Defendant then entered a plea "conditioned upon the filing of an appeal on the issue of whether there is such a charge as party to the crime of Homicide by Vehicle and Great Bodily Injury by Vehicle as raised in [the] motion to dismiss." During the plea hearing before the district court, Defendant agreed that the State could prove the factual basis for the plea agreement.

## II. DISCUSSION

**{4}** Defendant argues that the language of Section 66-8-101(C) limits the statute's application to only the person driving or in control of the vehicle, and that the narrow language of Section 66-8-120 cannot be used to charge and convict a passenger in that vehicle. This is an issue of first impression in New Mexico. Statutory interpretation is a matter of law, which is reviewed de novo. *State v. Duhon*, 2005-NMCA-120, ¶ 10, 138 N.M. 466, 122 P.3d 50. "When the language in a statute is clear and unambiguous, we give effect to that language and refrain from further statutory interpretation." *Id.* "Our primary goal when interpreting statutory language is to give effect to the intent of the [L]egislature." *State v. Torres*, 2006-NMCA-106, ¶ 8, 140 N.M. 230, 141 P.3d 1284. "We do this by giving

1

effect to the plain meaning of the words of statute, unless this leads to an absurd or unreasonable result." *State v. Marshall*, 2004-NMCA-104, ¶ 7, 136 N.M. 240, 96 P.3d 801. Statutes that define criminal conduct are strictly construed. *Santillanes v. State*, 115 N.M. 215, 221, 849 P.2d 358, 364 (1993).

**{5}** Section 66-8-101(C) states:

> A person who commits homicide by vehicle or great bodily harm by vehicle while under the influence of intoxicating liquor or while under the influence of any drug or while violating [NMSA 1978, Section 66-8-113 (1987)] is guilty of a third[-]degree felony and shall be sentenced pursuant to the provisions of [NMSA 1978, Section 31-18-15 (2007)], provided that violation of speeding laws as set forth in the Motor Vehicle Code [NMSA 1978, Section 66-1-1 (1978)] shall not per se be a basis for violation of [Section 66-8-113].

**{6}** Section 66-8-120 states:

> Every person who commits, attempts to commit, conspires to commit or aids or abets in the commission of any act declared herein to be a crime, whether individually or in connection with one or more other persons or as a principal, agent or accessory, shall be guilty of such offense, and every person who falsely, fraudulently, forcibly or willfully induces, causes, coerces, requires, permits or directs another to violate any provision of the Motor Vehicle Code [Section 66-1-1] or any other law of this state pertaining to motor vehicles is likewise guilty of such offense.

**{7}** Defendant claims that the State was operating under the portion of Section 66-8-120 that covers persons who aid or abet. However, Defendant posits a chain of logic which, in his view, establishes that a person cannot be convicted of aiding or abetting the crime defined in Section 66-8-101(C) as follows: (1) Section 66-8-101(C) applies only to the driver of a vehicle; (2) the driver can be guilty of the defined crime only if the homicide or great bodily injury by vehicle occurs while the driver is "under the influence of intoxicating liquor or . . . any drug;" (3) driving while under the influence is a strict liability crime requiring no specific mens rea; (4) New Mexico law on accessory liability requires the person charged as an accessory to have the same mental state as the principal; (5) a person charged with being an accessory to the crime defined in Section 66-8-101(C) does not share the principal's mental state if the principal is not required to have a particular mental state in order to be guilty of a crime, as is true for the crime of driving while intoxicated, which is a strict liability offense in New Mexico; and (6) there is no evidence of a common purpose and no evidence of shared driving.

**{8}** While we agree that Section 66-8-101(C) applies to the individual who was in control of the vehicle, Section 66-8-120 applies to "[e]*very person who* commits, attempts to commit, conspires to commit or *aids or abets in* the commission of *any act declared herein to be a crime*, whether individually or in connection with one or more other persons."

2

(Emphasis added.) Section 66-8-120 states specifically that it applies to "any provision of the Motor Vehicle Code [Section 66-1-1]." There is no exception for homicide or great bodily harm by vehicle while under the influence.

**{9}** We now turn to Defendant's argument that he cannot be convicted as an accessory if he cannot factually be deemed to have shared the mental state of the driver. Defendant contends that the law on accessory liability as defined in the Criminal Code is applicable to the crimes defined in the Motor Vehicle Code because it is presumed that "the [L]egislature was aware of existing . . . law and did not intend to enact a law [i.e., Section 66-8-120] inconsistent with existing law [the Criminal Code]." *State v. Chavez*, 2008-NMSC-001, ¶ 21, 143 N.M. 205, 174 P.3d 988 (internal quotation marks and citation omitted). We have interpreted the accessory provisions of the Criminal Code as requiring that the accessory share the criminal intent of the principal and that there be "a community of purpose and partnership in the unlawful undertaking." *State v. Gaitan*, 2001-NMCA-004, ¶ 14, 130 N.M. 103, 18 P.3d 1056 (internal quotation marks and citation omitted).

**{10}** We have no quarrel with Defendant's argument that the definition of accessory liability under the Criminal Code is applicable to the application of accessory liability as stated in Section 66-8-120. However, we are not persuaded that the nature of the crime of homicide or great bodily injury by vehicle while under the influence somehow negates the possibility of a shared criminal intent or community of purpose.

**{11}** New Mexico has defined "aid" and "abet" to mean "to help, assist, or facilitate the commission of a crime, or to promote the accomplishment thereof, or to help in advancing or bringing it about; or to encourage, counsel or incite as to its commission." *State v. Lord*, 42 N.M. 638, 649, 84 P.2d 80, 86 (1938) (internal quotation marks omitted). Neither mere presence nor presence with mental approbation is sufficient to sustain a conviction as an aider or abettor. *State v. Luna*, 92 N.M. 680, 683, 594 P.2d 340, 343 (Ct. App. 1979). Presence must be accompanied by some outward manifestation or expression of approval, or shared purpose. *Id*. This expression of partnership in an unlawful enterprise may be shown by words, actions, signs, conduct, encouragement, or any method sufficient to incite, encourage, or instigate commission of the offense. *Id*. The alleged aider and abettor must share the principal's criminal intent, but whether the principal's criminal intent was shared is a question of fact for the jury, which can be inferred from circumstances. *State v. Ochoa*, 41 N.M. 589, 603, 72 P.2d 609, 619 (1937).

**{12}** Both the State and Defendant argue aiding and abetting in the context of driving while intoxicated. This slightly misses the mark. The offense of driving while intoxicated does not require an intent to do a further act, or achieve a further consequence. *Harrison*, 115 N.M. at 78, 846 P.2d at 1087. However, as the committee commentary for the jury instruction on homicide or great bodily injury by vehicle states, the offense of "[h]omicide or great bodily injury by vehicle is not a strict liability crime and requires a *mens rea* element, 'a mental state of conscious wrongdoing.'" UJI 14-240 NMRA; *see State v. Jordan*, 83 N.M. 571, 572, 494 P.2d 984, 985 (Ct. App. 1972). Our Supreme Court has previously defined conscious wrongdoing as the "purposeful doing of an act that the law declares to be a crime." *State v. Omar-Muhammad*, 102 N.M. 274, 278, 694 P.2d 922, 926

3

(1985). "Thus, the mental state required for vehicular homicide (conscious wrongdoing) requires only that a defendant purposefully engage in an unlawful act." *Id*.

**{13}** The focus of the inquiry into a defendant's intent is slightly different, depending on whether the charge is aiding and abetting driving while intoxicated, or homicide and/or great bodily injury by vehicle. For Defendant to be convicted of aiding and abetting homicide or great bodily harm by vehicle, it would be necessary for the State to demonstrate that Defendant encouraged and shared the intent of conscious wrongdoing with Lucero to the extent that it escalated to a partnership in the enterprise. *See State v. Ortega*, 77 N.M. 7, 17, 419 P.2d 219, 227 (1966) (holding all that is necessary to be guilty as an aider and abettor to a crime is to share the criminal intent of the perpetrator and have community of purpose and partnership in the unlawful undertaking).

**{14}** We also reject Defendant's claim of lack of control over the vehicle because it is irrelevant and overlooks the concept of aiding and abetting. As we noted in *State v. Armijo*,

> one who participates in a criminal venture is treated by the law as if he or she had committed all of the criminal acts of the other participants. An accessory (say, the getaway driver) is prosecuted and punished as a principal. . . . Consequently, each member of a band of thieves that loots a warehouse is treated as having taken all the loot.

120 N.M. 702, 703, 905 P.2d 740, 741 (Ct. App. 1995). Aiding and abetting in this context does not require physical control over a vehicle.

**{15}** *State v. Hann*, 380 N.E.2d 1339, 1341 (Ohio Ct. App. 1977) is persuasive. There, the court held that a passenger may participate in the operation of a vehicle through "affirmative action of some sort, as distinguished from mere silence and inaction, [and] this participation need not be manifested by a direct physical contribution." *Id.* at 1340 (internal quotation marks and citations omitted). In the instant case, Defendant encouraged Lucero to drive and to continue their party. He purchased beer, which was consumed in the vehicle and, all the while, he knew that Lucero was intoxicated.

**{16}** Defendant asserts that there was no evidence that Lucero and he agreed to drink alcohol to the point of being under the influence and then to drive a vehicle; no evidence of a partnership to undertake unlawful activity; and no evidence that Defendant aided Lucero in controlling the vehicle. Additionally, Defendant states that there was no evidence establishing that Defendant intended Lucero's acts.

**{17}** The only facts this Court has are the facts alleged by the State under which Defendant entered a conditional plea. The State argues that Defendant provided encouragement and assistance to Lucero. Defendant knew that Lucero was intoxicated as evidenced by the fact that they were refused service at two bars and by Defendant's statements after the accident. It was Defendant who encouraged Lucero to drive his vehicle to continue their party. It was Defendant who purchased additional alcohol, which was consumed in the vehicle just prior to the accident. This situation is not a question of Defendant and Lucero agreeing to drink

4

alcohol to the point of being under the influence and then driving a vehicle, but a question of Defendant's knowledge of Lucero's intoxicated condition, and Defendant's approval and encouragement for Lucero to drive a vehicle. The facts do suggest a partnership between the two men, such that a jury could convict Defendant of aiding and abetting Lucero.

**{18}** We therefore conclude that Defendant's presence in the vehicle, his purchase of additional alcohol, his statements after the accident, his partnership before the accident, his knowledge of Lucero's intoxication, and Lucero's driving following Defendant's encouragement are all factors of the shared intent of conscious wrongdoing.

## III. CONCLUSION

**{19}** For the reasons stated above, we affirm Defendant's conditional plea of guilty.

**{20} IT IS SO ORDERED.**

_____
**ROBERT E. ROBLES, Judge**

**WE CONCUR:**

_____
**CYNTHIA A. FRY, Chief Judge**

_____
**MICHAEL D. BUSTAMANTE, Judge**

**Topic Index for _State v. Marquez_, Docket No. 27,971**

| | |
|---|---|
| **CL** | **CRIMINAL LAW** |
| CL-AA | Aiding or Abetting |
| CL-DG | Driving While Intoxicated |
| CL-MH | Motor Vehicle Violations |
| CL-VH | Vehicular Homicide |
| | |
| **CA** | **CRIMINAL PROCEDURE** |
| CA-PP | Plea and Plea Bargaining |
| | |
| **ST** | **STATUTES** |
| ST-IP | Interpretation |
| ST-LI | Legislative Intent |