**Certiorari Granted, No. 32,126, January 12, 2010**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2010-NMCA-007**

**Filing Date: November 18, 2009**

**Docket No. 26,837**

**STATE OF NEW MEXICO,**

  **Plaintiff-Appellee,**

**v.**

**RONALD MYERS,**

  **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Michael E. Vigil, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
M. Anne Kelly, Assistant Attorney General
Albuquerque, NM

for Appellant

Caren I. Friedman
Santa Fe, NM

Edwards Law Firm, P.A.
Marc W. Edwards
Santa Fe, NM

for Appellee

**OPINION**

**VIGIL, Judge.**

**{1}** Defendant was convicted of seven counts of sexual exploitation of children by

1

manufacturing child pornography, a second degree felony, in violation of NMSA 1978, Section 30-6A-3(D) (2001) (amended 2007), of the Sexual Exploitation of Children Act, NMSA 1978, Sections 30-6A-1 to -4 (1984, as amended through 2007). In *State v. Myers*, 2008-NMCA-047, 143 N.M. 710, 181 P.3d 702 (*Myers I),* we concluded that the essential elements of the crime established by *State v. Rendleman*, 2003-NMCA-150, 134 N.M. 744, 82 P.3d 554 were not proven, and reversed. On certiorari, the Supreme Court overruled and modified *Rendleman* in part, with the result that the elements of the crime were changed, and reversed. *State v. Myers*, 2009-NMSC-016, 146 N.M. 128, 207 P.3d 1105 *(Myers II)*.

**{2}**     The Supreme Court also remanded the case to us "to consider the parties' remaining claims, namely, [1] whether the Act is void for vagueness as applied to Defendant's conduct[,] and [2] whether the trial court properly entered a stay of execution that relieved Defendant of the obligation to register as a sex offender pending the outcome of this appeal." *Id.* ¶ 47.

**{3}**     We hold that, as applied to Defendant's conduct in this case, Section 30-6A-3(D) is void for vagueness and that the trial court properly exercised its discretion to relieve Defendant from registering as a sex offender pending the outcome of this appeal.

**BACKGROUND**

**{4}**     Sometime between May and September 2004, Defendant set up a video camera in a unisex bathroom adjacent to his office for the purpose of recording females while they used the restroom. *Myers II*, 2009-NMSC-016, ¶ 2. Defendant drilled a hole in the wall between the bathroom and his office and ran a cord from the camera to a TV/VCR he had hidden in his office closet. *Myers I*, 2008-NMCA-047, ¶ 2. When Defendant saw a female enter the restroom, he would record her on videotape as she used the toilet. *Myers II*, 2009-NMSC-016, ¶ 2. In September 2004, the video camera was discovered and a criminal investigation ensued. *Id.* ¶ 3. Videotapes of five females using the restroom, along with commercial pornographic magazines and videotapes, were found in Defendant's office. *Id.* ¶¶ 3, 4. Defendant admitted in a voluntary statement to the police that his purpose in recording females was his personal sexual gratification. *Id.*

**{5}**     Two of the females were minors at the time of recording. *Id.* ¶ 4. The State charged Defendant with nine counts of sexual exploitation of children by manufacturing child pornography in violation of Section 30-6A-3(D). *Myers II*, 2009-NMSC-016, ¶ 4. The State used photographs it extracted from the videotapes to prove its case, rather than the videotapes themselves. *Id.* ¶¶ 4, 7. Defendant faced no charges for recording the adult women because no statute prohibiting voyeurism was in effect at the time. Our voyeurism statute was not enacted until 2007. *See* NMSA 1978, § 30-9-20 (2007).

**{6}**     When Defendant was charged, we had already decided *Rendleman* in which we construed Section 30-6A-3(D) and established the essential elements of the offense. The Supreme Court denied certiorari in *Rendleman*. 2003-NMCERT-003, 135 N.M. 51, 84 P.3d

668. Accordingly, Defendant's bench trial and conviction for seven counts of sexual exploitation of children by manufacturing child pornography in violation of Section 30-6A-3(D) was based on the elements of the offense as determined by us in *Rendleman*. *Myers I*, 2008-NMCA-047, ¶ 8. (The State filed a nolle prosequi as to one count, and the district court directed a verdict on a second count. *Id.* ¶¶ 6,7).

**{7}** To convict Defendant, the State was required to prove that Defendant manufactured "obscene" photographs which depict a "prohibited sexual act." Section 30-6A-3(D) (prohibiting the manufacture of any "obscene" print medium depicting any "prohibited sexual act" by a child under eighteen years of age); § 30-6A-2(E) (defining "obscene"); § 30-6A-2(A)(5) (defining one type of a "prohibited sexual act"). To prove the photographs depict a "prohibited sexual act," the State was required to prove that they portrayed a "lewd and sexually explicit exhibition with a focus on the genitals or pubic area of any person for the purpose of sexual stimulation." *Myers I*, 2008-NMCA-047, ¶ 11; *Myers II*, 2009-NMSC-016, ¶19 (quoting § 30-6A-2(A)(5)). Thus, proof of three essential elements was required: (1) a "lewd and sexually explicit exhibition"; (2) with a "focus on the genitals or pubic area of any person"; (3) "for the purpose of sexual stimulation." *Rendleman*, 2003-NMCA-150, ¶ 42; *Myers I*, 2008-NMCA-047, ¶ 12; *Myers II*, 2009-NMSC-016, ¶ 19.

**{8}** In *Myers I*, we reversed Defendant's convictions on the grounds that statutory elements of a "prohibited sexual act" as construed in *Rendleman* were not satisfied. *Myers I*, 2008-NMCA-047, ¶¶ 10-18. Clearly, at the time of Defendant's conduct and at his subsequent bench trial, *Rendleman* was the applicable law. *See State v. Allen*, 82 N.M. 373, 374, 482 P.2d 237, 238 (1971) ("We have held that the law, at the time of the commission of the offense, is controlling."). On certiorari, the Supreme Court reversed our decision, holding that *Rendleman* incorrectly construed certain statutory elements of the offense. Without attempting an exhaustive analysis of its reasoning or how *Myers II* modified and overruled *Rendleman* in its interpretation of these statutory elements, we point to the following examples.

**{9}** As to the first element, *Rendleman* concluded that for a photograph to contain a "lewd and sexually explicit exhibition" the photograph must portray "a visible display or readily discernible depiction of a child engaged in sexually provocative conduct. In other words, the photograph must be identifiable as hard-core child pornography; that is, it must display visible signs of sexual eroticism, rather than merely depict a naked child." *Rendleman*, 2003-NMCA-150, ¶ 44. We applied this requirement in *Myers I*, 2008-NMCA-047, ¶12. However, in *Myers II*, the Supreme Court changed this proof requirement. The Supreme Court held that the statute is not limited to "hard-core child pornography" but includes all child pornography which the fact finder determines is obscene. 2009-NMSC-016, ¶¶ 18, 39; *see* § 30-6A-2(E) (defining "obscene" material).

**{10}** As to the third element, the Supreme Court rejected and explicitly overruled the objective standard test we adopted in *Rendleman* for determining whether the photographs were manufactured "for the purpose of sexual stimulation." 2003-NMCA-150, ¶ 42. *Myers*

3

*II* states, "We therefore reject the objective standard [adopted by *Myers I*] and adopt the subjective standard, which examines the criminal defendant's actual intent in distributing, possessing, or manufacturing the images, as the proper standard by which to assess whether the challenged material fulfills the 'for the purpose of sexual stimulation' element of Section 30-6A-2(A)(5)." *Myers II*, 2009-NMSC-016, ¶ 32. "Accordingly, we hereby overrule *Rendleman* to the extent that it held that the 'for purpose of sexual stimulation' prong of Section 30-6A-2(A)(5) . . . must be evaluated pursuant to an objective standard." *Myers II*, 2009-NMSC-016, ¶ 32.

**{11}** Two out of three elements of the crime having been changed between the time Defendant was tried and while Defendant's case was on appeal, we requested additional briefing from the parties on how the decision in *Myers II* affects Defendant's void for vagueness argument.

**VOID FOR VAGUENESS AS APPLIED**

**{12}** Defendant argues that Section 30-6A-3(D) is unconstitutionally vague as applied to his conduct. Although Defendant did not raise this issue in the trial court, we accept the parties' agreement that the issue is nevertheless properly before us. *State v. Laguna*, 1999-NMCA-152, ¶ 18, 128 N.M. 345, 992 P.2d 896 (holding that a void-for-vagueness challenge can be reviewed on appeal although not preserved in the trial court).

**{13}** Our review of Defendant's challenge to the statute is de novo. *Id.* ¶ 24. There is a strong presumption of constitutionality underlying each legislative enactment and the challenging party bears the burden of proving it is unconstitutional beyond all reasonable doubt. *Id.* We review the challenge "in light of the facts of the case and the conduct which is prohibited by the statute." *Id.* (internal quotation marks and citation omitted). "Because the essence of a vagueness claim rests on a lack of notice, a party may not succeed on the claim if the statute clearly applies to the defendant's conduct." *State v. Duran*, 1998-NMCA-153, ¶ 31, 126 N.M. 60, 966 P.2d 768.

**{14}** A statute can fail an applied void-for-vagueness challenge on either of two grounds. First, we ask "whether the statute allows individuals of ordinary intelligence a fair opportunity to determine whether their conduct is prohibited." *Laguna*, 1999-NMCA-152, ¶ 25. The second test asks "whether the statute permits police officers, prosecutors, judges, or juries to engage in arbitrary and discriminatory enforcement of the statute, which occurs because the statute has no standards or guidelines and therefore allows, if not encourages, subjective and *ad hoc* application." *Laguna*, 1999-NMCA-152, ¶ 26; *see also City of Chicago v. Morales*, 527 U.S. 41, 64 (1999) (striking down an ordinance because, in part, it failed to sufficiently limit police discretion in enforcement). We hold that the statute fails the first test and do not reach Defendant's argument that the statute is void for vagueness because it allows for arbitrary enforcement.

**{15}** *Bouie v. City of Columbia*, 378 U.S. 347, 351-52 (1964) reiterates the "basic

principle" that a criminal statute must give a person of ordinary intelligence fair notice of the conduct that the statute criminalizes or it will violate the Due Process Clause of the Fourteenth Amendment. *Bouie* adds that "an unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an ex post facto law, such as Art. I, § 10, of the Constitution forbids." *Bouie*, 378 U.S. at 353. If a state legislature is forbidden from passing such a law, "it must follow that a State Supreme Court is barred by the Due Process Clause from achieving precisely the same result by judicial construction." *Id.* at 353-54. *Bouie* concluded, "If a judicial construction of a criminal statute is unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue, it must not be given retroactive effect." *Id.* at 354 (internal quotation marks and citation omitted). Otherwise, a criminal defendant is deprived of due process of law "in the sense of fair warning that his contemplated conduct constitutes a crime." *Id.* at 355. The United States Supreme Court subsequently applied this test to determine whether the judicial retroactive alteration of a common law doctrine of criminal law violates due process. *Rogers v. Tennessee*, 532 U.S. 451, 461-62 (2001). We therefore agree with Defendant that a subsequent judicial interpretation applied retroactively can offend due process and render the statute void for vagueness as applied.

**{16}** We have previously considered the due process implications of retroactively applying the interpretation of a criminal statute to a defendant whose conduct, at the time of the alleged offense, did not fall under the statute. *State v. Alderette*, 111 N.M. 297, 298, 804 P.2d 1116, 1117 (Ct. App. 1990). In *Alderette*, we overruled a previous interpretation of NMSA 1978, Section 30-22-8 (1978), which criminalizes escapes from jail. The defendant in *Alderette* was in custody for civil contempt for failure to pay child support and was charged with escape after he failed to return to jail while on a work release. 111 N.M. at 298, 804 P.2d at 1117. At the time he escaped, the statute had been construed to apply only to individuals who had been committed to jail on a criminal conviction or charge. *State v. Garcia*, 98 N.M. 585, 588, 651 P.2d 120, 123 (Ct. App. 1982) (interpreting Section 30-22-8 to require "commitment to jail under a criminal charge or sentence"), *overruled by Alderette*, 111 N.M. at 298, 804 P.2d at 1117. In *Alderette*, we expressly overruled *Garcia* and held that Section 30-22-8 applies to individuals who have been committed to jail by lawful authority. *Alderette*, 111 N.M. at 299, 804 P.2d at 1118. We also held that retroactive application of our decision to the defendant would violate constitutional due process. *Id.* at 298, 804 P.2d at 1117. Relying on *Bouie*, we said, "[B]y overruling [*Garcia*], we have created a new base of conduct falling within Section 30-22-8. Accordingly, the Due Process Clause prevents retroactive applications of this changed construction . . . and that construction must be applied prospectively only." *Alderette*, 111 N.M. at 300, 804 P.2d at 1119.

**{17}** The Supreme Court briefly addressed the issue in *State v. Johnson*, 2001-NMSC-001, 130 N.M. 6, 15 P.3d 1233. In a footnote within the opinion, the Court considered whether application of its new construction of a criminal statute to the defendant in that case would violate due process. The Supreme Court concluded that since its new interpretation of the statute was foreseeable, applying the newly constructed statute to the defendant did not

5

violate due process. *Id.* ¶ 14 n.4.

**{18}** Our task under *Johnson* and *Alderette* is to determine whether the new interpretation of Section 30-6A-3(D) by our Supreme Court in *Myers II* was foreseeable. If it was not, its retroactive application to Defendant violates his right to due process. For the following reasons, we hold that Section 30-6A-3(D) is unconstitutionally vague as applied to Defendant's conduct because *Myers II* involved an unforeseeable interpretation of the statute.

**{19}** In *Myers II* the Supreme Court did not disagree with us that the elements of the crime as set forth in *Rendleman* were not proven by the State. Instead, the Supreme Court held that *Rendleman* itself was an incorrect interpretation of Section 30-6A-3(D). *Myers II*, 2009-NMSC-016, ¶¶ 18-21, 26, 27-32, 47.

**{20}** We point to only one reason why *Myers II* is an unforeseeable interpretation of Section 30-6A-3(D). The first statutory element of a prohibited sexual act is, as we have already stated, a "lewd and sexually explicit exhibition." *Myers II* concludes that because of their "voyeuristic quality", the photographs satisfy the "lewd" requirement. *Myers II*, 2009-NMSC-016, ¶¶ 23-24. However, at the time of Defendant's acts in 2004, voyeurism was not a crime. Section 30-9-20 was not enacted until 2007, and in its entirety provides:

> A. Voyeurism consists of intentionally using the unaided eye to view or intentionally using an instrumentality to view, photograph, videotape, film, webcast or record the intimate areas of another person without the knowledge and consent of that person:
>
> (1) while the person is in the interior of a bedroom, bathroom, changing room, fitting room, dressing room or tanning booth or the interior of any other area in which the person has a reasonable expectation of privacy; or
>
> (2) under circumstances where the person has a reasonable expectation of privacy, whether in a public or private place.
>
> B. Whoever commits voyeurism is guilty of a misdemeanor, except if the victim is less than eighteen years of age, the offender is guilty of a fourth degree felony.
>
> C. As used in this section:
>
> (1) "intimate areas" means the primary genital area, groin, buttocks, anus or breasts or the undergarments that cover those areas; and
>
> (2) "instrumentality" means a periscope, telescope,

binoculars, camcorder, computer, motion picture camera, digital camera, telephone camera, photographic camera or electronic device of any type.

**{21}** *Myers II* found the reasoning of *People v. Sven*, 848 N.E.2d 228, 239-40 (Ill. App. 2006), to be persuasive in determining whether the photographs in this case satisfy the statutory "lewd" requirement. In *Sven*, the appellate court of Illinois concluded that a videotape produced by the defendant, which depicted an unsuspecting teenage girl bathing naked in the bathtub, was lewd under Illinois' child pornography statute because "the tape places the viewer in the role of voyeur." 848 N.E.2d at 239. Our Supreme Court agreed with this statutory interpretation of a "lewd" photograph, and concluded that because the photographs depicted the females unclothed from the waist down, either before or after they used the toilet, they are lewd:

> The images therefore place the viewer in the position of a voyeur. This feeling of voyeurism is enhanced by the quality of the images, which are slightly unfocused and grainy, the perspective of the images, the victims are viewed from the floor adjacent to the toilet, and the shadows that border the images, which lend the sense that the viewer is peering at the female victims through a peep hole on the floor.

*Myers II*, 2009-NMSC-016, ¶ 23.

**{22}** Thus, not only did our Supreme Court adopt the reasoning in *Sven*, which was not decided until 2006, after Defendant's conduct in 2004, its decision in effect retroactively applied the voyeurism statute, adopted in 2007, to Defendant's 2004 conduct. The trial court could not have used this new legal test to determine whether the photographs were lewd because the test did not exist at the time of Defendant's trial. Aside from the difference in penalties (a fourth degree felony for voyeurism if the victim is less than eighteen years of age, and a second degree felony for child pornography), the *Myers II* test for determining what is "lewd" under our child pornography statute was not foreseeable.

**{23}** Therefore, retroactively applying *Myers II* to Defendant's conduct violates due process because it constitutes an unforeseeable judicial enlargement of the statute, which operates like an ex post facto law. Prior to Defendant's conduct, *Rendleman* was decided, and it determined what conduct would violate the statute. Defendant was then charged with violating the statute by committing acts proscribed by *Rendleman*, and the trial court, sitting as the finder of fact, applied *Rendleman* to determine if a crime occurred. On appeal, we then concluded that the essential elements of the criminal statute as construed by *Rendleman* were not proven. *Myers II* then overruled *Rendleman* in two material respects, thereby expanding the statutory reach of prohibited conduct to elements which did not exist in 2004, when Defendant committed his acts.

**{24}** This is a classic detriment to Defendant's due process right of fair notice.

7

> It is clear that the ex post facto prohibition in the federal constitution applies only to legislative acts and not to judicial decisions. At the same time, it is obvious that the rationale behind the ex post facto prohibition . . . is relevant in the situation where a judicial decision is applied retroactively to the disadvantage of a defendant in a criminal case. . . .
>
> Perhaps the easiest case is that in which a judicial decision subsequent to the defendant's conduct operates to his detriment by overruling a prior decision which, if applied to the defendant's case, would result in his acquittal.

1 Wayne R. LaFave, *Substantive Criminal Law* § 2.4(c), at 162 (2d ed. 2003) (footnotes omitted). Under the circumstances of this case, we conclude that it is unreasonable to expect a person of ordinary intelligence to be on notice of what conduct was within the scope of Section 30-6A-3(D). Retroactively applying the new *Myers II* interpretation of the statute to Defendant's conduct therefore offends due process. *Alderette*, 111 N.M. at 300, 804 P.2d at 1119; *see State v. Vance*, 403 S.E.2d 495, 500-01 (N.C. 1991) (abolishing the common law year-and-a-day rule for murder cases, but concluding that applying the new rule to the defendant's case would violate due process); *Ex parte Alexander v. State*, 475 So. 2d 628, 629-30 (Ala. 1985) (overruling existing precedent to construe an escape statute for the first time to include the defendant's conduct, but concluding that applying the new interpretation of the statute to the defendant's conduct would violate due process).

**{25}** We hold that Section 30-6A-3(D) is void for vagueness as applied to Defendant.

## STAY OF SORNA REGISTRATION PENDING APPEAL

**{26}** The trial court stayed Defendant's mandatory registration as a sex offender pursuant to NMSA 1978, Section 29-11A-4 (2000), pending the outcome of this appeal. The State contends that the trial court had no authority to do so under the Sex Offender Registration and Notification Act, NMSA 1978, Sections 29-11A-1 to -10 (1995, as amended through 2005) (SORNA). The State further asserts it may raise the issue for the first time on appeal as a jurisdictional issue in its answer brief without preserving the issue in the trial court and without filing a cross appeal. Because the Supreme Court has directed us to address the question on the merits, we do not consider whether the State is correct in asserting it may raise this issue for the first time on appeal in its answer brief. *See Vinton Eppsco Inc. of Albuquerque v. Showe Homes, Inc.*, 97 N.M. 225, 226, 638 P.2d 1070, 1071 (1981) ("[T]he duty of a lower court on remand is to comply with the mandate of the appellate court, and to obey the directions therein without variation, even though the mandate may be erroneous.").

**{27}** At the conclusion of Defendant's bench trial, the trial court filed its judgment and committed Defendant to the custody of the corrections department for a sixty-day diagnostic evaluation. The trial court specifically directed "that [D]efendant be evaluated to assess

8

whether or not [D]efendant is a pedophile, and for his amenability to treatment and rehabilitation as a sex offender, as well as his risk of re-offending as a sex offender." The trial court then sentenced Defendant to a total prison term of eighteen years, and suspended fifteen years, for a total incarceration term of three years. Defendant was ordered to be on supervised probation for not less than five years and not more than twenty years following his incarceration with special conditions which included that Defendant register as a sex offender as required by SORNA, and that he participate in any recommended sexual offender treatment.

**{28}** Defendant filed a notice of appeal and filed a motion requesting that conditions of release be set pending the appeal. The trial court set conditions of release pending appeal which included a one hundred thousand dollar ($100,000) bond, electronic monitoring, and continuing sex offender treatment. Defendant then sought an order specifying that his conditions of release pending appeal included a stay of his sex offender registration under SORNA. At the hearing, the trial court noted that the diagnostic evaluation concluded that Defendant is not a pedophile and that with appropriate treatment, Defendant's risk of reoffending is low. Further, the trial court was of the opinion that Defendant's appeal raised serious questions. Following the hearing, in addition to the conditions of release previously imposed, the trial court entered its order that Defendant was required to inform the sheriff's department of his current residence and work location, and update that information with any changes. However, the trial court order also directed that Defendant's obligation to register as a sex offender under SORNA was stayed pending the outcome of his appeal.

**{29}** Section 29-11A-4(B) of SORNA directs in pertinent part, "A sex offender . . . shall register with the county sheriff no later than ten days after being released from the custody of the corrections department, a municipal or county jail or a federal, military or tribal correctional facility or detention center or being placed on probation or parole." The State argues that due to the mandatory language of the statute, the trial court has no authority to order a stay of its registration requirement pending the outcome of an appeal. However, because SORNA does not explicitly deprive a trial court of its discretion to stay the registration requirement pending appeal, and our rules and statutes otherwise vest such discretion in the trial court, we disagree.

**{30}** Whether SORNA prohibits the trial court from staying sex offender registration pending appeal presents a question of law, which is subject to our review de novo. *See State v. Rivera*, 2004-NMSC-001, ¶ 9, 134 N.M. 768, 82 P.3d 939 (stating that the interpretation of a statute is a matter of law which is subject to our de novo review).

**{31}** The effect of allowing release pending appeal is to stay execution of the sentence, and a trial court is specifically granted authority to establish conditions of release pending appeal. Rule 5-402(C) NMRA provides:

> After imposition of a judgment and sentence, the court, upon motion of the
> defendant, may establish conditions of release pending appeal or a motion for

9

new trial. The court may utilize the criteria listed in Paragraph B of Rule 5-401, and may also consider the fact of defendant's conviction and the length of sentence imposed. The defendant shall be detained unless the district court after a hearing determines that the defendant is not likely to flee and does not pose a danger to the safety of any other person or the community if released. In the event the court requires a bail bond in the same amount as that established for release pending trial, the bond previously furnished shall continue pending appeal or disposition of a motion for a new trial, unless the surety has been discharged by order of the court. Nothing in this rule shall be construed as prohibiting the judge from increasing the amount of bond on appeal.

*See* Rule 12-205(B) NMRA (providing that upon motion the trial court shall initially set conditions of release pending appeal); NMSA 1978, § 31-11-1(C) (1988) (providing that where a defendant is convicted of a noncapital offense other than a violent offense and is sentenced to a term of imprisonment not suspended in whole, he may be released pending appeal if the trial court finds by clear and convincing evidence that the defendant is not likely to flee or pose a danger to the safety of any other person or the community if released; and that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in reversal or an order for a new trial).

**{32}** Historically, our courts have been vested with discretion to grant a stay pending appeal under conditions they deem appropriate. *See Rivera*, 2004-NMSC-001, ¶ 26 (stating that defendants are given a qualified opportunity for release pending appeal and that a defendant's sentence is stayed when conditions set by the trial court have been set and complied with); *State v. Montoya*, 116 N.M. 297, 307, 861 P.2d 978, 988 (Ct. App. 1993) (stating that it is within the trial court's discretion to set conditions of release and amount of bail pending appeal); *State v. Lucero*, 81 N.M. 578, 579, 469 P.2d 727, 728 (Ct. App. 1970) (stating that the determination of what bail is appropriate pending appeal is within the discretion of the trial court). *See also State v. Valles*, 2004-NMCA-118, ¶ 13, 140 N.M. 458, 143 P.3d 496 (stating that a trial court has discretion to modify conditions of release after a defendant has been found guilty).

**{33}** We therefore conclude that a trial court has discretion to stay SORNA registration pending an appeal. In this case, no argument has been made that the trial court abused its discretion, and under the circumstances, we do not perceive an abuse of discretion.

**CONCLUSION**

**{34}** For the above reasons we reverse Defendant's convictions.

**{35}** **IT IS SO ORDERED.**

_____

10

**MICHAEL E. VIGIL, Judge**

WE CONCUR:

_____

**MICHAEL D. BUSTAMANTE, Judge**

_____

**RODERICK T. KENNEDY, Judge**

Topic Index for *State v. Myers*, No. 26,837

| **CT** | **CONSTITUTIONAL LAW** |
| CT-DP | Due Process |
| CT-VO | Vague or Overbroad |
| | |
| **CL** | **CRIMINAL LAW** |
| CL-EL | Elements of Offense |
| CL-SE | Sexual Exploitation of Children |
| | |
| **MS** | **MISCELLANEOUS STATUTES** |
| MS-SX | SORNA (Sexual Offender Registration and Notification Act) |