**Certiorari Denied, May 6, 2011, No. 32,956**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2011-NMCA-065**

**Filing Date:  March 18, 2011**

**Docket No. 30,399**

**STATE OF NEW MEXICO,**

        **Plaintiff-Appellant,**

**v.**

**ALFRED LOVATO,**

        **Defendant-Appellee.**

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Michael E. Vigil, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Ralph E. Trujillo, Assistant Attorney General
Albuquerque, NM

for Appellant

Bregman & Loman, P.C.
Sam Bregman
Eric Loman
Albuquerque, NM

for Appellee

**OPINION**

**VANZI, Judge.**

**{1}**      The State appeals from the district court order dismissing with prejudice one count
of homicide by vehicle, NMSA 1978, Section 66-8-101(C) (2004), and one count of accident
involving death or personal injuries, NMSA 1978, Section 66-7-201(C) (1989).  Although

1

Defendant was not the driver of the vehicle, Defendant was charged pursuant to the parties to a crime provision of the Motor Vehicle Code. *See* NMSA 1978, § 66-8-120 (1978). In dismissing the charges against Defendant, the district court concluded that this Court's decision in *State v. Marquez*, 2010-NMCA-064, 148 N.M. 511, 238 P.3d 880, *cert. quashed*, 2010-NMCERT-006, 148 N.M. 584, 241 P.3d 182, was an unforeseeable interpretation of Section 66-8-120, could not be retroactively applied to Defendant, and passengers would not have had fair notice, prior to *Marquez*, that the conduct Defendant engaged in exposed him to criminal prosecution. On appeal, the State contends that Section 66-8-120 "provided a person of ordinary intelligence fair notice that it was a crime to aid and abet vehicular homicide[,]" and application of Section 66-8-120 to the facts of Defendant's case would not violate due process. Having considered the arguments raised by the State on appeal, we reverse the district court and remand for the charges against Defendant to be reinstated.

## BACKGROUND

{2}     The State alleges that on the evening of November 25, 2008, and in the early morning hours of November 26, 2008, Carlos Fierro and Defendant went out drinking. According to the State, it was Defendant's idea to go out and get a few drinks and smoke a cigar. The two men first consumed alcohol at the Rio Chama Steakhouse, and then Fierro drove the two of them to Willie's Blues Bar at Defendant's encouragement. The two men consumed more alcohol at Willie's Blues Bar—alcohol purchased by Defendant. After leaving the bar, Fierro struck William Tenorio with his vehicle as Tenorio was crossing the street outside of the bar. Witnesses testified that Fierro and Defendant drove away from the scene of the accident. Fierro was later identified as the driver, and Defendant was identified as the passenger of the vehicle that struck Tenorio. After Fierro's car was stopped by police, the police concluded that Fierro was intoxicated. Tenorio later died from the injuries he sustained from being hit by Fierro's vehicle.

{3}     On June 3, 2009, subsequent to this Court issuing its opinion in *Marquez*, the State filed charges against Defendant on a theory of accomplice liability under Section 66-8-120. The district court dismissed the charges on the basis that *Marquez* could not be retroactively applied to Defendant. The district court found that Defendant did not have fair notice that his conduct, which occurred prior to *Marquez* being decided, exposed him to the possibility of criminal prosecution.

## DISCUSSION

### This Court's Decision in *Marquez*

{4}     We begin our analysis by first examining this Court's decision in *Marquez*. In *Marquez*, we were presented with the issue of whether there was "such a charge as party to the crime of homicide by a vehicle and great bodily injury by a vehicle." *Marquez*, 2010-NMCA-064, ¶ 1. We looked to the statutory language of Section 66-8-101(C) and Section 66-8-120, established case law regarding accessory liability under the criminal code, and case law and commentary defining the requisite mens rea for homicide by vehicle, and

concluded that a defendant could aid and abet in the crime of homicide by vehicle or great bodily injury by vehicle. *Marquez*, 2010-NMCA-064, ¶¶ 8-15.

**{5}** Section 66-8-101(C) provides:

A person who commits homicide by vehicle or great bodily harm by vehicle while under the influence of intoxicating liquor or while under the influence of any drug or while violating [NMSA 1978, Section 66-8-113 (1987)] is guilty of a third degree felony.

**{6}** Section 66-8-120 provides:

Every person who commits, attempts to commit, conspires to commit or aids or abets in the commission of any act declared herein to be a crime, whether individually or in connection with one or more other persons or as a principal, agent or accessory, shall be guilty of such offense, and every person who falsely, fraudulently, forcibly or willfully induces, causes, coerces, requires, permits or directs another to violate any provision of the Motor Vehicle Code [Section 66-1-1] or any other law of this state pertaining to motor vehicles is likewise guilty of such offense.

**{7}** We pointed out in *Marquez* that Section 66-8-120 makes it a crime to aid or abet in violation of any provision of the Motor Vehicle Code. *Marquez*, 2010-NMCA-064, ¶ 8. Further, in defining how a person goes about aiding or abetting in homicide by vehicle or great bodily injury by vehicle, our analysis relied on pre-existing case law discussing accessory liability. We stated that we had previously "interpreted the accessory provisions of the Criminal Code as requiring that the accessory share the criminal intent of the principal and that there be a community of purpose and partnership in the unlawful undertaking." *Id.* ¶ 9 (internal quotation marks and citation omitted). We further noted that in order to constitute a "community of purpose and partnership" someone who aids and abets must do more than merely be present; instead, that person's "[p]resence must be accompanied by some outward manifestation or expression of approval, or shared purpose." *Id.* ¶¶ 11, 13. Finally, we acknowledged that prior case law identified the requisite criminal intent for homicide by vehicle as conscious wrongdoing or the "purposeful doing of an act that the law declares to be a crime." *Id.* ¶ 12 (internal quotation marks and citation omitted). Consequently, in *Marquez*, this Court concluded that based on the defendant's knowledge that the driver was intoxicated, evidenced by the fact that they were refused service at two bars and by the defendant's admissions after the accident that he knew the driver was drunk, the defendant's encouragement of the driver to drive his vehicle although intoxicated, and the defendant's purchase of alcohol consumed in the vehicle just prior to the accident, the defendant had aided and abetted in the crime of homicide by vehicle or great bodily injury by vehicle. *Id.* ¶ 17.

**The District Court Erred in Dismissing the Charges Against Defendant**

**{8}** In the district court order granting Defendant's motion to dismiss the charges

3

against him, the district court concluded:

> [P]assengers simply could not have been on notice or had fair warning of the standards set forth in *Marquez*. Assuming for purposes of this [o]rder that Defendant's actions were the same as those of the defendant in *Marquez*, that he shared the driver's criminal intent, and that all factual issues were resolved in favor of the State, he could not have had fair notice prior to *Marquez* of the criminal liability defined by the standards set forth in that case.

In support of its ruling, the district court stated that, prior to *Marquez*, there were no established standards as to the requisite mens rea for homicide by vehicle or as to what level of participation would subject a passenger to criminal prosecution, and it was only by means of this Court's decision in *Marquez* that these standards were established.

**{9}** "We have previously considered the due process implications of retroactively applying the interpretation of a criminal statute to a defendant whose conduct, at the time of the alleged offense, did not fall under the statute." *State v. Myers*, 2010-NMCA-007, ¶ 16, 147 N.M. 574, 226 P.3d 673, *cert. granted*, 2010-NMCERT-001, 147 N.M. 674, 227 P.3d 1056; *see also State v. Alderette*, 111 N.M. 297, 298, 804 P.2d 1116, 1117 (Ct. App. 1990). In doing so, we have adhered to the basic principle that "a criminal statute must give a person of ordinary intelligence fair notice of the conduct that the statute criminalizes or it will violate the Due Process Clause of the Fourteenth Amendment." *Myers*, 2010-NMCA-007, ¶ 15. In *Myers*, we looked to *Bouie v. City of Columbia*, 378 U.S. 347 (1964), for guidance in determining whether a subsequent judicial interpretation applied retroactively can offend due process. *Myers*, 2010-NMCA-007, ¶ 15. There, we stated, "an unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an ex post facto law, such as Art. I, § 10, of the Constitution forbids." *Myers*, 2010-NMCA-007, ¶ 15 (internal quotation marks and citation omitted). "An *ex post facto law* has been defined . . . as one that makes an action done before the passing of the law, and which was *innocent* when done, criminal; and punishes such action, or that *aggravates* a *crime*, or makes it *greater* than it was, when committed." *Alderette*, 111 N.M. at 300, 804 P.2d at 1119 (alteration in original) (internal quotation marks and citation omitted). Thus, we stated in *Myers* that "[i]f a state legislature is forbidden from passing such a law, it must follow that a [court] is barred by the Due Process Clause from achieving precisely the same result by judicial construction." 2010-NMCA-007, ¶ 15 (internal quotation marks and citation omitted). We further stated,

> If a judicial construction of a criminal statute is unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue, it must not be given retroactive effect. Otherwise, a criminal defendant is deprived of due process of law in the sense of fair warning that his contemplated conduct constitutes a crime.

*Id.* (internal quotation marks and citations omitted).

4

**{10}**     In determining whether application of a new construction of a criminal statute would violate due process, our task is to determine whether the new interpretation was foreseeable. *Id.* ¶ 18; *see State v. Johnson*, 2001-NMSC-001, ¶ 14, n.4, 130 N.M. 6, 15 P.3d 1233 ("The test in determining whether such an interpretation and retroactive application of a statute offends due process is whether the construction actually given the statute was foreseeable."). If this Court's interpretation of Section 66-8-120 in *Marquez* was foreseeable, then Defendant was on notice that his conduct was arguably in violation of the law and there is no due process violation. On the other hand, if our interpretation was unforeseeable, the retroactive application of that interpretation to Defendant's conduct would violate his right to due process.

**{11}**     The State argues that, unlike other cases in which a judicial interpretation has been held to violate due process if retroactively applied, this Court's decision in *Marquez* neither overturned preexisting case law nor constituted a judicial enlargement of a criminal statute. We find the State's argument persuasive. In *Alderette*, this Court overruled a previous judicial interpretation of the escape from jail statute. 111 N.M. at 298, 804 P.2d at 1117. The earlier decision of this Court had held that the escape from jail statute only applied to those persons committed on a criminal charge. *Id.* We subsequently overruled that decision and held that "[i]f a person is committed to a jail by lawful authority and thereafter escapes from that jail, he can be charged with escape from jail." *Id.* at 299, 804 P.2d at 1118. Because this Court's interpretation of the escape from jail statute in *Alderette* created a new base of conduct that fell within the statute, we held that its interpretation of the statute could not be retroactively applied to the defendant. *Id.* at 300, 804 P.2d at 1119.

**{12}**     Similarly, in *Bouie*, the United States Supreme Court held that the South Carolina Supreme Court's interpretation of a statute regarding criminal trespass could not be retroactively applied to the defendants where the language of the statute did not proscribe the petitioner's conduct. 378 U.S. at 362-63. The language prohibited persons from entering the property of another after notice not to enter, but the South Carolina court interpreted the statute as also criminalizing the act of remaining on the premises after being asked to leave. *Id.* at 355, 360. There, the United States Supreme Court held that "[t]he crime for which the[] petitioners stand convicted was not enumerated in the statute at the time of their conduct." *Id.* at 363 (internal quotation marks omitted). Accordingly, the South Carolina Supreme Court's interpretation of its criminal trespass statute acted as a judicial enlargement of the statute, criminalizing a new base of conduct, thus violating due process. *Id.* at 362-63.

**{13}**     Such a judicial enlargement did not occur in the present case. Here, the plain language of the statute indicates that it is a crime to aid and abet in a violation of the Motor Vehicle Code. This Court in *Marquez* neither changed a previous interpretation of Section 66-8-120 nor enlarged the scope of the conduct criminalized by our Legislature's enactment of Section 66-8-120. Instead, this Court relied on pre-existing case law to define common terminology contained in the statute. Our interpretation of Section 66-8-120 was neither "unexpected" nor "indefensible by reference to the law which had been expressed prior to the conduct in issue[.]" *Myers*, 2010-NMCA-007, ¶ 15 (internal quotation marks and citation omitted). Thus, we conclude that this Court's interpretation of Section 66-8-120 as set forth in *Marquez* was foreseeable. *See Johnson*, 2001-NMSC-001, ¶ 14, n.4 ("The Court

5

engages in an impermissible interpretation of a statute when the interpretation is so unexpected, and so outlandish, that no reasonable person could have expected it." (alteration, internal quotation marks, and citation omitted)).

**{14}** To the extent the district court concluded that, prior to *Marquez*, passengers were not on "notice that they would be subject to criminal liability as a party to the crime of homicide by vehicle while under the influence of intoxicating liquor," we construe the district court's order as concluding that Section 66-8-120 was unconstitutionally vague. Similar to our analysis above of whether *Marquez* was a foreseeable interpretation of Section 66-8-120, "[t]he vagueness doctrine is based on the principle of fair notice in that no one may be held criminally responsible and subject to criminal sanctions for conduct without fair warning as to the nature of the proscribed activity." *Santillanes v. State*, 115 N.M. 215, 221 n.5, 849 P.2d 358, 364 n.5 (1993). "[A] statute denies constitutional due process if it is so vague that persons of common intelligence must necessarily guess at its meaning." *State v. Rogers*, 94 N.M. 527, 529, 612 P.2d 1338, 1340 (Ct. App. 1980) (internal quotation marks and citation omitted).

**{15}** Section 66-8-120 clearly sets out that it is a crime for a person to aid and abet in a violation of the Motor Vehicle Code. Section 66-8-101(C), which provides that it is a third degree felony to commit homicide by vehicle or great bodily injury by vehicle while under the influence of intoxicating liquor or drug, is contained in the Motor Vehicle Code. To the extent *Marquez* set forth standards for applying Section 66-8-120 by examining how we have interpreted accessory provisions under the Criminal Code, the Legislature's failure to define these standards within Section 66-8-120 does not render the statute unconstitutionally vague. To the contrary, "[t]he [L]egislature is not required to write statutes for the understanding of persons who cannot or will not apply ordinary meanings to plain words[.]" *Rogers*, 94 N.M. at 529, 612 P.2d at 1340. "If the language used makes the statute understandable and sensible, that is all that is necessary to uphold it as valid." *Id.* We therefore conclude that Section 66-8-120 provided fair notice that the conduct Defendant engaged in could expose him to criminal prosecution.

**{16}** Finally, the fact that *Marquez* was the first time Section 66-8-120 had been interpreted by an appellate court in this state is of little consequence to our decision. "A judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction." *Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 312-13 (1994). When this Court engages in the judicial construction of a statute "it is explaining its understanding of what the statute has meant continuously since the date when it became law." *Id.* at 313, n.12. Because we conclude that this Court's interpretation of Section 66-8-120 in *Marquez* was foreseeable, we reverse the district court order dismissing the charges against Defendant with prejudice.

**CONCLUSION**

**{17}** For the foregoing reasons, we reverse and remand to the district court for the charges against Defendant to be reinstated.

**{18}    IT IS SO ORDERED.**

_____

**LINDA M. VANZI, Judge**

**WE CONCUR:**

_____

**CELIA FOY CASTILLO, Chief Judge**

_____

**JAMES J. WECHSLER, Judge**

**Topic Index for _State v. Lovato_, Docket No. 30,399**

| | |
|---|---|
| **CT** | **CONSTITUTIONAL LAW** |
| CT-DP | Due Process |
| CT-EX | Ex Post Facto |
| | |
| **CL** | **CRIMINAL LAW** |
| CL-AC | Accessory |
| CL-AA | Aiding or Abetting |
| CL-VH | Vehicular Homicide |
| | |
| **ST** | **STATUTES** |
| ST-IP | Interpretation |