**Certiorari Denied, May 20, 2011, No. 32,981**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number:     2011-NMCA-068**

**Filing Date: April 18, 2011**

**Docket No. 29,716**

**STATE OF NEW MEXICO,**

        **Plaintiff-Appellee,**

**v.**

**JOHN LEESON,**

        **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF EDDY COUNTY**
**Jane Shuler Gray, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
James W. Grayson, Assistant Attorney General
Albuquerque, NM

for Appellee

Liane E. Kerr
Albuquerque, NM

for Appellant

**OPINION**

**CASTILLO, Chief Judge.**

**{1}**     Defendant John Leeson was convicted of sixteen counts of sexual exploitation of children in violation of NMSA 1978, Section 30-6A-3(D) (2007). On appeal, he claims that the district court erred in denying his motion to merge the counts, that the district court wrongly determined his confession was voluntary, and that the district court should have granted his motion for mistrial. We find no error in the proceedings below and affirm.

**BACKGROUND**

**{2}** Between February and October 2007, Defendant took numerous digital photographs of his live-in girlfriend's two daughters. The children were under the age of thirteen at the time the photographs were taken. The photographs were not admitted into the record proper, but we discern from the record that they were highly sexually suggestive and involved, in part, close-ups of the children's genitalia and buttocks. Defendant's girlfriend inadvertently discovered several of the images and reported the matter to the police. Defendant was arrested and, during a police interview, confessed to taking the photographs and further admitted that he had a "problem" and needed "counseling." A subsequent search of Defendant's computer revealed that he possessed many other sexualized images of children.

**{3}** The State brought two separate cases against Defendant. The matter before us concerns only the photographs that Defendant took of the child victims. As to those photographs, Defendant was charged by amended criminal information with twenty counts of "Sexual Exploitation of Children (Manufacturing)," in violation of Section 30-6A-3(D). This statute provides, in relevant part, that "[i]t is unlawful for a person to intentionally manufacture any obscene visual or print medium depicting any prohibited sexual act or simulation of such an act if one or more of the participants in that act is a child under eighteen years of age." *Id.*

**{4}** Prior to trial, Defendant moved to have the twenty counts merged into one count citing the double jeopardy clauses of the United States and New Mexico Constitutions and also filed a motion calling into question the voluntariness of his confession. The court reserved ruling on the merger issue, apparently persuaded that the issue would be best addressed after trial, and denied Defendant's motion concerning the confession, concluding that Defendant's statements to the police were voluntary.

**{5}** At trial, a video of Defendant's confession was played for the jury. In that video, Defendant was heard making references to past drug use. This prompted Defendant to move for a mistrial, but the court denied that motion and instructed the jury to disregard any alleged criminal acts that were not charged.

**{6}** At the close of trial, the district court denied Defendant's motion to merge the counts and concluded that it was up to the jury to decide whether Defendant had committed each of the twenty violations charged. The jury determined that Defendant was guilty of only sixteen of the twenty counts. The court entered judgment and sentenced Defendant. Defendant appeals.

**DISCUSSION**

**{7}** On appeal, Defendant challenges the district court's denial of his motion to merge the counts, asserts that the court erred in determining that his confession was voluntary, and

claims that the court should have granted his motion for mistrial. We address these arguments in turn but first discuss a problem we have identified with the court's judgment and sentence.

**Judgment and Sentence**

{8} Defendant was initially charged by criminal information with twenty counts of violating Section 30-6A-3(C). As noted, the State amended the criminal information and charged Defendant with twenty counts of violating Section 30-6A-3(D). At trial, the jury was properly instructed on the essential elements relating to Section 30-6A-3(D). However, for reasons that are not at all clear, the judgment and sentence indicates that Defendant was convicted of three counts of violating Section 30-6A-3(D) and thirteen counts of violating Section 30-6A-3(C). In addition, Defendant was sentenced on three counts of sexual exploitation (manufacturing), a violation of Section 30-6A-3(D), and thirteen counts of sexual exploitation (recording), a violation of Section 30-6A-3(C).

{9} The significance of the discrepancy between the charges and the judgment and sentence is unclear to us. We cannot determine whether the discrepancy between the charges and the judgment is merely a scrivener's error or something more significant. The parties do not appear to have recognized the inconsistency and have not raised it in their briefs. Although remand is necessary to clarify the matter, this issue does not interfere with our ability to address the issues on appeal as they are unrelated to, and unaffected by, the discrepancy.

**Merger**

{10} Citing the double jeopardy clauses of the United States and New Mexico Constitutions, Defendant argues that the district court erred when it denied his motion to merge the counts. "A double jeopardy claim is a question of law that we review de novo." *State v. Bernal*, 2006-NMSC-050, ¶ 6, 140 N.M. 644, 146 P.3d 289.

{11} "The double jeopardy clause of the [F]ifth [A]mendment, made applicable to the states by the [F]ourteenth [A]mendment due process clause, provides: '[N]or shall any person be subject for the same offen[s]e to be twice put in jeopardy of life or limb[.]'" *Swafford v. State*, 112 N.M. 3, 7, 810 P.2d 1223, 1227 (1991) (fifth alteration in original) (citation omitted). "Our courts long have held that the state and federal constitutional prohibitions against double jeopardy are of such similarity that they should be construed and interpreted in the same fashion." *Herron v. State*, 111 N.M. 357, 358-59 n.2, 805 P.2d 624, 625-26 n.2 (1991). The United States Supreme Court has previously "stated a tripartite model of the double jeopardy clause: It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *Swafford*, 112 N.M. at 7, 810 P.2d at 1227. Defendant has invoked the last of these three protections.

{12} "In multiple punishment cases there are two types of potential issues: '(1) multiple violations of the same statute, referred to as 'unit of prosecution' cases; and (2) violations

of multiple statutes, referred to as 'double-description' cases.'" *State v. Collins*, 2007-NMCA-106, ¶ 18, 142 N.M. 419, 166 P.3d 480 (citation omitted). We are concerned here with the former of these two types, a unit of prosecution case.

**{13}** The relevant inquiry in a unit of prosecution case "is whether the [L]egislature intended punishment for the entire course of conduct or for each discrete act." *Swafford*, 112 N.M. at 8, 810 P.2d at 1228. "For unit-of-prosecution challenges, the only basis for dismissal is proof that a suspect is charged with more counts of the same statutory crime than is statutorily authorized." *Bernal*, 2006-NMSC-050, ¶ 13. This is because "the *only* function the Double Jeopardy Clause serves in cases challenging multiple punishments is to prevent the prosecutor from bringing more charges, and the sentencing court from imposing greater punishments, than the Legislative Branch intended." *Herron*, 111 N.M. at 359, 805 P.2d at 626 (internal quotation marks and citation omitted).

**{14}** The unit-of-prosecution analysis is done in two steps. "First, we review the statutory language for guidance on the unit of prosecution." *Collins*, 2007-NMCA-106, ¶ 19 (internal quotation marks and citation omitted). "If a statute's unit of prosecution is clearly defined, we must look no further than the face of the statute." *State v. Boergadine*, 2005-NMCA-028, ¶ 15, 137 N.M. 92, 107 P.3d 532. A statute's unit of prosecution is determined by the statutory definition of the crime; in other words, we ask "how the [L]egislature has defined the scope of conduct composing one violation of [the] statute." *State v. Thompson*, 200 P.3d 22, 28 (Kan. 2009). This is essentially a matter of statutory construction. *Herron*, 111 N.M. at 359, 805 P.2d at 626. "If the statute does not clearly define the unit of prosecution, we must determine whether the different offenses are separated by sufficient indicia of distinctness[.]" *State v. Castañeda*, 2001-NMCA-052, ¶ 13, 130 N.M. 679, 30 P.3d 368 (alteration in original) (internal quotation marks and citation omitted). In doing so, we rely on the six factors set out in *Herron*. *State v. Barr*, 1999-NMCA-081, ¶ 16, 127 N.M. 504, 984 P.2d 185. As described below, we conclude that the unit of prosecution for Section 30-6A-3(D) is clear from the face of the statute.

**{15}** As previously stated, Section 30-6A-3(D) states that "[i]t is unlawful for a person to intentionally manufacture any obscene visual or print medium depicting any prohibited sexual act or simulation of such an act if one or more of the participants in that act is a child under eighteen years of age." The Legislature has provided specific definitions for several of the terms within this statute, and our Supreme Court has previously discussed at least one of those specific definitions.

**{16}** To "manufacture" is to engage in "the production, processing, copying by any means, printing, packaging or repackaging of any visual or print medium depicting any prohibited sexual act or simulation of such an act if one or more of the participants in that act is a child under eighteen years of age." NMSA 1978, § 30-6A-2(D) (2001) (internal quotation marks omitted). The term "obscene" refers to "any material, when the content if taken as a whole[] (1) appeals to a prurient interest in sex, as determined by the average person applying contemporary community standards; (2) portrays a prohibited sexual act in a patently offensive way; and (3) lacks serious literary, artistic, political or scientific value." Section 30-6A-2(E) (internal quotation marks omitted). In *State v. Myers*, 2009-NMSC-016, ¶ 39,

4

146 N.M. 128, 207 P.3d 1105, our Supreme Court explained that "[a]ll child pornography, not just hard-core child pornography, is unacceptable and intolerable to New Mexico citizens and, therefore, obscene under the [Sexual Exploitation of Children] Act." (Emphasis omitted.) Finally, the terms "visual or print medium" means

> (1) any film, photograph, negative, slide, computer diskette, videotape, videodisc or any computer or electronically generated imagery; or
> (2) any book, magazine or other form of publication or photographic reproduction containing or incorporating any film, photograph, negative, slide, computer diskette, videotape, videodisc or any computer generated or electronically generated imagery[.]

Section 30-6A-2(B) (internal quotation marks omitted).

**{17}** We conclude, based on the foregoing, that the unit of prosecution for Section 30-6A-3(D)—the scope of conduct composing one violation of the statute—is readily discernible. A violation of the statute occurs where a criminal defendant intentionally produces or copies a photograph, electronic image, or video that constitutes child pornography. As applied in the present matter, it is clear to us that each photograph Defendant took of the child victims was a discrete violation of the statute. We observe that there has never been any question that the photographs Defendant took of the victims constituted child pornography. Accordingly, double jeopardy did not require the counts against Defendant to be merged. The State was free to charge Defendant for each photograph he manufactured of the child victims as this is exactly what Section 30-6A-3(D) permits. We cannot say exactly how many photographs were manufactured. Defendant did not include the photographs in the record proper, but it is clear that there were at least twenty photographs.

**{18}** Defendant disagrees with our conclusion and relies on *State v. Olsson*, 2008-NMCA-009, 143 N.M. 351, 176 P.3d 340, as support for his claim that the unit of prosecution is not clear from the face of the statute. In *Olsson*, the defendant was charged with sixty counts of possession of child pornography in violation of Section 30-6A-3(A) after law enforcement discovered three binders in his vehicle which contained sixty photographs constituting child pornography. *Olsson*, 2008-NMCA-009, ¶ 1. As in the present matter, the defendant argued that double jeopardy concerns required that the counts merge. *Id.* On appeal, we laid out the unit of prosecution analysis and determined that we were unable to discern the Legislature's intended unit of prosecution with respect to Section 30-6A-3(A) from the face of the statute. *Olsson*, 2008-NMCA-009, ¶ 9. Section 30-6A-3(A) provides the following:

> It is unlawful for a person to intentionally possess any obscene visual or print medium depicting any prohibited sexual act or simulation of such an act if that person knows or has reason to know that the obscene medium depicts any prohibited sexual act or simulation of such act and if that person knows or has reason to know that one or more of the participants in that act is a child under eighteen years of age.

5

**{19}** We are unpersuaded that the conclusion in *Olsson* applies here. Section 30-6A-3(D) is significantly different from Section 30-6A-3(A). As explained above, the unit of prosecution for Section 30-6A-3(D) is apparent from the face of the statute— producing or copying a single image of child pornography is sufficient to constitute a violation of Section 30-6A-3(D). We were less confident in *Olsson* about the meaning of the statutory language in Section 30-6A-3(A). Specifically, we were troubled by what the Legislature intended by the word "possess" and questioned whether the Legislature meant to criminalize the possession of a collection of child pornography or the possession of each individual image within that collection. *Olsson*, 2008-NMCA-009, ¶ 8. We see no similar complexity as regards Section 30-6A-3(D). *Olsson* is inapposite.

**{20}** We hold that the unit of prosecution for Section 30-6A-3(D) is clear on its face and that double jeopardy was not violated when Defendant was charged with twenty counts. We reject Defendant's arguments to the contrary and affirm the district court on this issue.

**Voluntariness of Confession**

**{21}** Defendant argues that his confession was involuntary because it was elicited by false or implied promises and threats. "We review de novo the voluntariness of confessions." *State v. Evans*, 2009-NMSC-027, ¶ 32, 146 N.M. 319, 210 P.3d 216. "In doing so, we examine the totality of the circumstances surrounding the confession in order to decide the ultimate question of voluntariness." *State v. Fekete*, 120 N.M. 290, 298, 901 P.2d 708, 716 (1995) (internal quotation marks and citation omitted).

**{22}** "Coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *State v. Munoz*, 1998-NMSC-048, ¶ 21, 126 N.M. 535, 972 P.2d 847 (internal quotation marks and citation omitted). "For the confession to be involuntary, there must be an essential link between coercive activity of the State . . . and a resulting confession by a defendant." *Id.* (alteration in original) (internal quotation marks and citation omitted). "If the state fails to prove voluntariness by a preponderance of the evidence, the trial court must rule that the confession was involuntary as a matter of law." *Aguilar v. State*, 106 N.M. 798, 800, 751 P.2d 178, 180 (1988). "Evidence of express promises of leniency . . . renders a confession involuntary as a matter of law." *State v. Tindle*, 104 N.M. 195, 199, 718 P.2d 705, 709 (Ct. App. 1986). "[T]hreats that merely highlight potential real consequences, or are 'adjurations to tell the truth,' are not characterized as impermissibly coercive." *Evans*, 2009-NMSC-027, ¶ 43 (citation omitted).

**{23}** On November 17, 2007, officers began investigating the incidents that gave rise to the charges against Defendant. Detective Scott London testified that, because he did not have a recording device at Defendant's residence, he asked Defendant to come to the police department to be interviewed. Defendant agreed to do so, and another officer transported Defendant to the police department. He was not handcuffed either in the car or in the interview room and was not placed under arrest. Detective London did not consider Defendant to be in custody but, nonetheless, informed him of his *Miranda* rights. Defendant was not actually arrested until July 14, 2008.

**{24}** Detective Chris Kohler interviewed Defendant on November 17, 2007, and again on July 14, 2008.[1] The district court's order on Defendant's motion to determine the voluntariness of his admissions concluded that Detective Kohler made one express promise during the first interview when the officer promised Defendant that he would not be going to jail that night. At the hearing on the motion, Defendant testified that Detective Kohler had told him that, if he did not admit to anything, he would not go home that night. The district court, having reviewed the DVD of the November 17, 2007 interview, rejected Defendant's assertion that avoiding jail that night was conditioned on his making admissions. The court quoted Detective Kohler as having stated, "[r]ight now, no matter what happens, no matter what you tell me, and I swear to this, I have no intentions of putting you in jail *tonight*." The express promise did not concern long term leniency, only the avoidance of jail that night and provided no incentive or disincentive to make admissions. The district court noted that the detective kept this promise, even though Defendant made certain admissions.

**{25}** The district court also concluded that Defendant could have inferred an implied promise to get help for him if he was cooperative. At the hearing on his motion, Defendant pointed to the following statements Detective Kohler made in the first interview as implied promises. "If you have a problem, we can help you. . . . I promise you, I will do everything I can to help you . . . . That might be something we can help you with." We addressed similar statements regarding possible treatment in *State v. Lobato*, 2006-NMCA-051, ¶ 1, 139 N.M. 431, 134 P.3d 122, where the defendant was charged with criminal sexual penetration of a minor. We agreed that the statements in that case gave the impression that the defendant would get treatment if he confessed, but we did not find any promise that the defendant would get treatment instead of prison time or would get a lesser sentence of imprisonment. *Id.* ¶ 20. We concluded that the defendant's confession was not rendered involuntary by the officer's discussion of possible treatment. *Id.* We reach the same conclusion here.

**{26}** Defendant also alleges that, in the course of the second interview, Detective Kohler made a statement to the effect that he (Detective Kohler) was the only thing standing between Defendant and the federal government. Defendant testified that he understood this as both a threat and a promise that, if he confessed, he would not be charged with violation of child pornography laws by the federal government. The context of Detective Kohler's statement includes Defendant's having already made admissions approximately eight months earlier at the first interview, his awareness that an arrest warrant had been issued, and his having turned himself in upon learning of the warrant.

**{27}** On its face, Detective Kohler's statement contains neither an implied promise nor a threat, although Defendant might have interpreted it as the detective's opinion that prosecution by the State would result in a better outcome for Defendant than prosecution in the federal courts. "It is not per se coercive for police to truthfully inform an accused about

---

[1]The video recording of the November 17, 2007 interview was played for the jury, but is very difficult to understand on the recordings of the trial. The record proper does not contain a separate DVD of the interview alone. As mentioned below, the recording of July 14, 2008, was not played at trial due to difficulties with redaction.

the potential consequences of his alleged actions." *Evans*, 2009-NMSC-027, ¶ 43. Defendant does not argue that Detective Kohler's comment, to the extent that it may be taken as an implied warning, was untruthful. Accordingly, we see no coercion.

{28} As discussed above, the voluntariness of a confession is reviewed under a totality of the circumstances standard. *Fekete*, 120 N.M. at 298, 901 P.2d at 716. In its order on Defendant's motion, the district court recited the following additional circumstances as the basis for its conclusion: "Defendant in this case is not a minor; his mental state has not been questioned; he was not under the influence of drugs or alcohol; and the length of the interview was not excessive[.]" We agree with the district court that, under the totality of circumstances, Defendant's confession was not coerced, and his admissions were voluntary.

**Mistrial**

{29} Finally, Defendant argues that the district court should have declared a mistrial after the jury heard references to his past drug use. We begin by further discussing the facts underlying this claim.

{30} The DVD video recording of Defendant's November 17, 2007 interview was played at trial for the jury. Because Defendant was facing additional charges based on other images in a separate case and because the recording mentioned those other charges, the parties stipulated in limine that any reference to other misconduct would be redacted from the recording. Detective Kohler informed the court before trial that he had made the redactions, but had some technical difficulties in doing so regarding the match between the audio and video.

{31} When the recording was played at trial, there was no mention of the charges in the separate case, but certain references to Defendant's alleged past drug use remained and were heard by the jury. Upon the first of these, which apparently consisted of Detective Kohler's observation that Defendant was not on drugs, Defendant asked for a bench conference and moved for a mistrial. Observing that the motion in limine had concerned the charges in the separate case and not Defendant's past drug use, the district court denied the mistrial but, nevertheless, instructed the jury to disregard any mention of acts that might be a crime, but were not charged. Defendant did not immediately object after two more mentions of drug use but renewed his motion for mistrial based on the cumulative effect of the references. The context of these additional drug references was that Defendant had been clean since rehabilitation and that he had been falsely accused of drug dealing. The court denied the motion for mistrial but instructed Detective Kohler to redact any remaining drug references from the recording. Ultimately, the State was unable to show the DVD of the second interview, as redaction was not possible.

{32} We review a district court's denial of a motion for mistrial for an abuse of discretion. *State v. McDonald*, 1998-NMSC-034, ¶ 26, 126 N.M. 44, 966 P.2d 752. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case." *State v. Sutphin*, 107 N.M. 126, 130, 753 P.2d 1314, 1318 (1988). "The overwhelming New Mexico case law states that the prompt sustaining of the

8

objection and an admonition to disregard the answer cures any prejudicial effect of inadmissible testimony." *State v. Gonzales*, 2000-NMSC-028, ¶ 37, 129 N.M. 556, 11 P.3d 131 (internal quotation marks and citation omitted).

**{33}** We begin with the circumstances under which the purported evidence of prior misconduct was presented. First, it consisted of Defendant's own prior statement and was not deliberately elicited by the State. Second, the circumstances in which the jury heard this evidence resulted in part from a failure of communication among the parties. There appears to have been no clear understanding between the State and Defendant as to what they agreed to redact, and Defendant did not specifically move for redaction of the drug references. Third, the State left the redaction process to Detective Kohler, who might reasonably have understood that he was to remove only the mention of the charges in the separate case. Fourth, Defendant did not review or request to review the redacted version of the interview before trial. Finally, the references were to Defendant's denial of drug dealing and to his drug use in the past, including the fact that he had been through rehabilitation and was now clean.

**{34}** The New Mexico Supreme Court addressed a similar factual setting in *McDonald*. 1998-NMSC-034. There, a witness in a murder trial testified that he had smoked a marijuana cigarette with the defendant. *Id.* ¶ 22. The trial court offered to give a cautionary instruction, which the defendant refused. *Id.* ¶ 25. The trial court denied the defendant's motion for mistrial. *Id.* ¶ 28. Our Supreme Court cited two factors in holding that the trial court did not abuse its discretion. *Id.* ¶¶ 27-28. First, the mention of smoking marijuana was inadvertent and was not emphasized by either party. *Id.* Second, the defendant refused a cautionary instruction, which might have cured any potential prejudice. *Id.*

**{35}** In the present case, the references to Defendant's past drug use were not too emphasized by either party. In addition, after the first reference, the district court gave a cautionary instruction, which we conclude cured any prejudice that might have resulted. We base this conclusion in part on the fact that the first reference was Detective Kohler's comment on Defendant's *non-use* of drugs. As for the two subsequent references, we note that Defendant did not immediately object to them and that they also concerned Defendant's *non-use* of drugs, which the jury had already been instructed to disregard.

**{36}** For the reasons set out above, we conclude that the district court did not abuse its discretion in denying Defendant's motion for mistrial.

**CONCLUSION**

**{37}** The district court did not err in rejecting Defendant's request to merge the charges, in determining that Defendant's confession was voluntary, and in denying Defendant's motion for mistrial. However, this matter is remanded to the district court to correct the judgment and sentence.

**{38}    IT IS SO ORDERED.**

9

**CELIA FOY CASTILLO, Chief Judge**

**WE CONCUR:**

**JAMES J. WECHSLER, Judge**

**LINDA M. VANZI, Judge**

**Topic Index for _State v. Leeson_, Docket No. 29,716**

| | |
|---|---|
| **AE** | **APPEAL AND ERROR** |
| AE-SR | Standard of Review |
| | |
| **CT** | **CONSTITUTIONAL LAW** |
| CT-CF | Confession |
| CT-DJ | Double Jeopardy |
| | |
| **CL** | **CRIMINAL LAW** |
| CL-SE | Sexual Exploitation of Children |
| | |
| **CA** | **CRIMINAL PROCEDURE** |
| CA-CF | Confession |
| CA-JS | Judgment and Sentence |
| CA-MO | Merger of Offenses |
| CA-MT | Mistrial |