IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2014-NMSC-012

Filing Date: April 21, 2014

Docket No. 33,226

STATE OF NEW MEXICO,

 Plaintiff-Respondent,

v.

JAMES MICHAEL OLSSON,

 Defendant-Petitioner.

Consolidated with:

Docket No. 33,565

STATE OF NEW MEXICO,

 Plaintiff-Petitioner and
 Cross-Respondent,

v.

WILLARD BALLARD,

 Defendant-Respondent and
 Cross-Petitioner.

ORIGINAL PROCEEDINGS ON CERTIORARI
Teddy L. Hartley and Stephen K. Quinn, District Judges

Jorge A. Alvarado, Chief Public Defender
Nina Lalevic, Assistant Public Defender
Santa Fe, NM

for Petitioner James Michael Olsson

1

Gary K. King, Attorney General
Martha Anne Kelly, Assistant Attorney General
James W. Grayson, Assistant Attorney General
Santa Fe, NM

for Respondent and Petitioner State of New Mexico

Jorge A. Alvarado, Chief Public Defender
Kimberly M. Chavez Cook, Assistant Appellate Defender
Santa Fe, NM

for Respondent Willard Ballard

**OPINION**

**MAES, Justice.**

**{1}**      In this opinion, we decide the correct unit of prosecution for possession of child pornography under NMSA 1978, Section 30-6A-3(A) (2007), part of the Sexual Exploitation of Children Act, NMSA 1978, §§ 30-6A-1 to -4 (1984, as amended through 2007) (the Act), when various media are used to store one or countless images. This opinion consolidates for review memorandum opinion *State v. Olsson*, No. 29,713, mem. op. (N.M. Ct. App. Aug. 23, 2011) (non-precedential) and *State v. Ballard,* 2012-NMCA-043, 276 P.3d 976. Defendant James Olsson (Olsson) was initially charged with sixty counts of possession based on three binders containing photographs of minors. Defendant William Ballard (Ballard) was charged with twenty-five counts of possession based on an external computer hard drive containing still images and videos of minors.

**{2}**      We hold that the Legislature has not clearly defined the unit of prosecution for possession of child pornography because the language is ambiguous and the history and purpose do not offer any further clarity. We also hold that the *Herron* indicia of distinctness test is not applicable in cases of possession. *Herron v. State*, 1991-NMSC-012, 111 N.M. 357, 805 P.2d 624. Therefore, we resort to the rule of lenity and hold that Olsson and Ballard can each only be charged with one count of possession of child pornography.

**I.      FACTS AND PROCEDURAL HISTORY**

**A.      State v. Olsson**

**{3}**      Olsson was charged with sixty counts of possession of child pornography based on photographs of minors found in three binders seized from Olsson and images found on his computer. Olsson filed a motion for merger of counts asking the trial court to determine the proper unit of prosecution for those charged with possession under Section 30-6A-3(A). Olsson argued that he should only be charged with one unitary act of possession. The trial

2

court denied the motion, ruling that if Olsson's reading of the statute were to be accepted, the language would become meaningless and an offender would be free to acquire unlimited child pornography without additional counts being charged. The State then amended the criminal information, adding additional counts of possession of child pornography for a total of 152 counts based on more images found on Olsson's computer.

{4}     The trial court certified the question on unit of prosecution to the Court of Appeals on interlocutory appeal. *State v. Olsson*, 2008-NMCA-009, 143 N.M. 351, 176 P.3d 340 (*Olsson I*). The Court of Appeals ruled that Section 30-6A-3(A) does not clearly define the unit of prosecution and looked to the distinctness factors and the rule of lenity as established in *Herron*. *Olsson I*, 2008-NMCA-009, ¶ 9. The Court of Appeals was unable to conduct a *Herron* analysis, however, because it lacked relevant facts regarding the binders and individual photographs. *Olsson I*, 2008-NMCA-009, ¶ 10. Specifically, the Court of Appeals did not know if there were "multiple victims, whether the pictures were all acquired from one source or multiple sources, or whether they were acquired all at once or one at a time." *Id.* The Court of Appeals therefore remanded for further factual development. *Id.* ¶ 11.

{5}     On remand Olsson pleaded guilty to six counts of possession of child pornography for a sentence of eight years and reserved the right to appeal the unit of prosecution issue. On appeal, Olsson claimed that because the six counts were based on three counts for the three different binders containing child pornography and three counts for three digital images found on Olsson's laptop, that the six counts of possession violated his constitutional protections against double jeopardy.

{6}     The Court of Appeals reaffirmed its holding from the 2008 review on interlocutory appeal that Section 30-6A-3(A) does not specify a clear unit of prosecution for possession of child pornography. *Olsson*, No. 29,713, mem. op. at 6. Further, because Olsson failed to offer new facts on remand, the Court of Appeals ruled that it still lacked sufficient information to apply the *Herron* factors and was not obligated to reach the rule of lenity. *Olsson*, No. 29,713, mem. op. at 9-10. Therefore, the Court of Appeals affirmed Olsson's convictions. *Id*. at 12.

{7}     Olsson appealed to this Court pursuant to Rule 12-502 NMRA raising one issue: "Should the Court of Appeals have applied the *Herron* factors to the three digital images in this case despite the fact that no testimony was presented regarding the images?" We granted certiorari.

**B.     State v. Ballard**

{8}     Ballard gave his computer and two external hard drives to his coworker, Daniel Etlicher, and asked him to perform software updates. Approximately two weeks later, Ballard admitted to Etlicher that he had downloaded a pornography file that came with child pornography and asked Etlicher to erase the memory on the two external hard drives. Etlicher turned the computer over to the police. Police testified at trial that Ballard told them

3

he had downloaded the files from a peer-to-peer computer program and was aware that he had downloaded child pornography. Ballard was charged with fifty-one counts of possession and at pretrial filed a motion to merge the counts into a single count. Just prior to trial, the State amended the criminal information to twenty-five counts.

**{9}** At trial a computer forensics analyst testified that twenty-five files had been "created" or "downloaded" on five separate occasions. There were eight files consisting of video clips and seventeen files consisting of still images. The eight video clips were downloaded on April 7, April 17, May 11, May 21, and May 25, 2007. All of the still images were downloaded on April 7, 2007. All of the images and videos clips were contained on a single external hard drive. The jury convicted Ballard on all twenty-five counts. At sentencing and after arguments on the merger issue, the trial court determined that all of the images were distinct, concluded that there were no charges for "obvious duplications of participants" in the images, and declined to merge the twenty-five counts. Ballard was sentenced to thirty-seven-and-a-half years in prison, with all but nine years suspended. Ballard appealed, claiming that based on double jeopardy grounds, the twenty-five counts merge into one count consisting of a unitary course of conduct. *Ballard*, 2012-NMCA-043, ¶ 2.

**{10}** The Court of Appeals found that each distinct download constituted a separate offense, but that multiple images within a download were not separate offenses. *Id.* ¶¶ 28-30. The Court concluded that the facts of this case fit within Section 30-6A-2(B)(2) as a form of reproduction "containing or incorporating . . . any computer generated or electronically generated imagery[.]" *Ballard*, 2012-NMCA-043, ¶ 29 (alteration and omission in original) (internal quotation marks omitted). The Court of Appeals held that the statutory language was ambiguous as to the unit of prosecution and that resort to tests of distinctness and the rule of lenity was appropriate. *Id.* The Court rejected the State's argument that the unit of prosecution should be based on the number of victims because "Section 30-6A-3(A) specifically recognizes that the medium may depict 'one or more' under-aged participants in a prohibited sexual act." *Ballard*, 2012-NMCA-043, ¶ 30. While the Court of Appeals found that the evidence consisted of twenty-five files, consisting of or containing twenty-five separate images, it reduced the twenty-five convictions to five because "[e]ach of Defendant's five separate downloads was in the nature of a single bundling of images for possession purposes . . . ." *Id.* ¶¶ 1, 29.

**{11}** The State appealed and raised one question for review: "Did the Court of Appeals err in reducing the twenty-five counts of sexual exploitation of children, which were based on twenty-five separate images, to five counts, based primarily upon the fact that Defendant downloaded the images on five separate calendar days?" We granted certiorari.

**{12}** Ballard filed a cross-petition and raised an intent argument, specifically that the evidence was insufficient at trial to establish that he had knowledge of the child pornography on his computer. Ballard did not raise that issue on appeal, nor is sufficiency of the evidence before this Court. Further, the State points out that the jury was fully instructed on the

4

elements of possession and constructive possession and only had to prove that the files were in Ballard's presence or control, not that he had actual knowledge of every image. Therefore, we do not address the issues argued in Ballard's cross-petition.

**{13}** Because both cases question the proper unit of prosecution under Section 30-6A-3(A), we have consolidated the cases.

## II.     STANDARD OF REVIEW

**{14}** The issue of intended unit of prosecution is a question of law subject to de novo review. *See State v. Rowell,*1995-NMSC-079, ¶ 8, 121 N.M. 111, 908 P.2d 1379 ("The main goal of statutory construction is to give effect to the intent of the legislature. . . . Interpretation of a statute is an issue of law, not a question of fact. . . . We review questions of law de novo." (citations omitted)).

## III.    DISCUSSION

### A.      The plain meaning of the statutory language is ambiguous

**{15}** The State argues that the plain meaning of the statute indicates a legislative intent to create multiple units of prosecution. Specifically, the Legislature's use of the word "any" in conjunction with singular words, such as "obscene visual or print medium" and "prohibited sexual act," creates a presumption of multiple units of prosecution.

**{16}** Olsson argues that the use of "visual or print medium" in Section 30-6A-3(A) indicates a clear legislative intent not to punish per child depicted but rather the broader act of possessing the medium as defined. Olsson asserts that should the Court determine that the act of possession is the unit of prosecution, then the *Herron* factors are not relevant and the Court should look to analyzing the act of possessing child pornography by analogy to analyzing the act of possessing drugs. Olsson urges that the proscribed item in Section 30-6A-3(A) is "any obscene visual or print medium depicting any prohibited sexual act." Olsson argues that because the intent to possess is generalized to an entire collection, the act of possessing the proscribed item is the unit of prosecution.

**{17}** Ballard argues that the definition of "visual or print medium" in Section 30-6A-2(B)(1) includes exactly what he possessed, a "computer diskette." Ballard asserts that singular terms like "image" and "depiction" are notably missing from Subsection (B). Thus Ballard argues that the unit of prosecution is defined by the medium, not the number of acts the medium depicts, because otherwise a film depicting multiple acts would support multiple counts, even though a film is, by the statute's own definition, a single medium. Ballard contends that, because the various visual or print media listed in Section 30-6A-2(B) include both single-image media and collection-type media, the unit of prosecution is insurmountably ambiguous and this Court must focus on a defendant's conduct to decide what the Legislature intended. Finally, Ballard agrees with the State that the word "any" may

5

help identify the proscribed item. However, Ballard insists that the State exaggerates the term's usefulness and misguidedly relies on out-of-state cases to argue that "any" implicates multiple units of prosecution because all of the statutory language cited is distinguishable from New Mexico's statutory language.

**{18}** "The relevant inquiry in [a unit of prosecution case] is whether the legislature intended punishment for the entire course of conduct or for each discrete act." *Swafford v. State,* 1991-NMSC-043, ¶ 8, 112 N.M. 3, 810 P.2d 1223. The plain language of the statute is the primary indicator of legislative intent. *See Whitely v. N.M. State Pers. Bd.*, 1993-NMSC-019, ¶ 5, 115 N.M. 308, 850 P.2d 1011. This analysis requires courts to determine the unit of prosecution intended by the Legislature by employing a two-part test. *State v. Gallegos*, 2011-NMSC-027, ¶ 31, 149 N.M. 704, 254 P.3d 655. First, courts must analyze the statute to determine whether the Legislature has defined the unit of prosecution and, if the statute spells out the unit of prosecution, then the court follows that language and the inquiry is complete. *State v. Swick*, 2012-NMSC-018, ¶ 33, 279 P.3d 747. If the unit of prosecution is not clear from the statutory language, courts must "determine whether a defendant's acts are separated by sufficient 'indicia of distinctness' to justify multiple punishments." *Gallegos*, 2011-NMSC-027, ¶ 31 (internal quotation marks and citations omitted). Even when analyzing the indicia of distinctness courts are guided by the "language, history, purpose, as well as the quantum of punishment that is prescribed." *Id.* ¶ 33. If there is no distinctness to the acts charged, then the rule of lenity applies, meaning "doubt will be resolved against turning a single transaction into multiple offenses." *Herron*, 1991-NMSC-012, ¶ 14 (internal quotation marks and citation omitted).

**{19}** Section 30-6A-3(A) provides that:

> It is unlawful for a person to intentionally possess any obscene visual or print medium depicting any prohibited sexual act or simulation of such an act if that person knows or has reason to know that the obscene medium depicts any prohibited sexual act or simulation of such act and if that person knows or has reason to know that one or more of the participants in that act is a child under eighteen years of age. A person who violates the provisions of this subsection is guilty of a fourth degree felony.

The definition of "visual or print medium" includes:

> (1) any film, photograph, negative, slide, computer diskette, videotape, videodisc or any computer or electronically generated imagery; or
> (2) any book, magazine or other form of publication or photographic reproduction containing or incorporating any film, photograph, negative, slide, computer diskette, videotape, videodisc or any computer generated or electronically generated imagery.

Section 30-6A-2(B)(1), (2).

6

**{20}** Subsections (B)(1) and (B)(2) of Section 30-6A-2 address possession of individual items of visual media, such as a photograph or a slide, as well as items that could contain multiple individual images, such as a film or a computer diskette. However, the statute is unclear whether individual photographs contained in a scrapbook can be charged collectively or separately, and whether certain types of collections might fit one subsection but not the other. *See Ballard,* 2012-NMCA-043, ¶ 24.

**{21}** Moreover, the use of the word "any" in the statute only compounds the ambiguity. The State cites cases that interpret statutes of other states as allowing multiple units of prosecution when using "any" with singular nouns. *See, e.g.*, *United States v. Snyder*, 189 F.3d 640, 647 (7th Cir. 1999); *Fink v. State*, 817 A.2d 781, 787-88 (Del. 2003); *Williams v. Commonwealth*, 178 S.W.3d 491, 494-95 (Ky. 2005); *Commonwealth v. Dingle*, 898 N.E.2d 1, 9 n.10 (Mass. App. Ct. 2008). However, Olsson and Ballard adequately distinguish those statutes by legislative intent or context, or cite states whose statutes indicate a single unit of prosecution using the same language. *See, e.g.*, *Mason v. Commonwealth*, 636 S.E.2d 480, 483-84 (Va. Ct. App. 2006); *State v. Valdez*, 894 P.2d 708, 711-14 (Ariz. Ct. App. 1994); *Braunstein v. Frawley*, 407 N.Y.S.2d 250, 253-54 (N.Y. App. Div. 1978). We are not convinced by either argument. We do not undertake an analysis of the cases cited by the parties because the multiple interpretations argued by the parties only highlight the lack of clarity in Section 30-6A-2(B). *See State v. DeGraff*, 2006-NMSC-011, ¶ 33, 139 N.M. 211, 131 P.3d 61 ("[W]e are not persuaded that the statute's use of the word 'any' shows the Legislature's intent to permit only a single conviction for all tampering with a single crime scene.").

**{22}** This case is unlike *State v. Leeson* where the Court of Appeals determined that the unit of prosecution was "readily discernible" for violations of Section 30-6A-3(D). *Leeson*, 2011-NMCA-068, ¶ 17, 149 N.M. 823, 255 P.3d 401. Section 30-6A-3(D) states that "[i]t is unlawful for a person to intentionally manufacture any obscene visual or print medium depicting any prohibited sexual act or simulation of such an act if one or more of the participants in that act is a child under eighteen years of age." *Declared unconstitutional by State v. Myers*, 2010-NMCA-007, ¶¶ 3, 24-25, 147 N.M. 574, 226 P.3d 673 (holding that Section 30-6A-3(D) is void for vagueness because it is unreasonable to expect a person of ordinary intelligence to be on notice of what conduct was within the scope of Section 30-6A-3(D)). To "manufacture" is to engage in "the production, processing, copying by any means, printing, packaging or repackaging of any visual or print medium depicting any prohibited sexual act or simulation of such an act if one or more of the participants in that act is a child under eighteen years of age." Section 30-6A-2(D). The Court of Appeals concluded that the unit of prosecution was "readily discernible" because "[a] violation of the statute occurs where a criminal defendant intentionally produces or copies a photograph, electronic image, or video that constitutes child pornography." *Leeson*, 2011-NMCA-068, ¶ 17. Section 30-6A-3(D) is significantly different from Section 30-6A-3(A), and as discussed above we cannot similarly conclude that the unit of prosecution is "readily discernible" in Section 30-6A-3(A).

**{23}** Because the plain meaning as to the proper unit of prosecution is not apparent, the statutory language is ambiguous. It should be noted that this Court is fatigued with the plain

7

meaning argument when the language is unquestionably ambiguous, as in this case. We next look to the history and purpose of Section 30-6A-3 for further clarification.

**B.      The history and purpose of Section 30-6A-3 do not define a clear unit of prosecution**

**{24}**      The State contends that the purpose and key element of the statute is to protect children from being used as sexual objects, which would indicate a unit of prosecution equal to each distinct prohibited sexual act. The State argues that possession of child pornography is part of the prohibited behavior that the Legislature intended to protect against as evidenced in the title of Section 30-6A-3 ("An act relating to criminal law; making it a criminal offense for a person to possess an obscene . . . medium that depicts a sexual act involving a child . . . ."). 2001 N.M. Laws, ch. 2, § 2. The State also cites *Myers*, which held that "[c]hild pornography is particularly harmful because the child's actions are reduced to a recording which could haunt the child in future years, especially in light of the mass distribution system for child pornography." 2009-NMSC-016, ¶ 17 (internal quotation marks and citation omitted). Tracking the history of Section 30-6A-3, the State points out that the Legislature amended the possession portion in 2001 to make possession a crime independent of pecuniary gain or distribution, indicating a goal of prohibiting solely possession. *Compare* § 30-6A-3(A) (2001), *with* § 30-6A-3(A) (1993).

**{25}**      Ballard agrees that the general purpose of the statute is to protect children from being sexually exploited but argues that the statute also addresses more than one social evil. Ballard asserts that the statute is aimed primarily at victimization, which occurs when the sexually exploitative material is created, whereas possession is a later consequence. The Legislature recognized this by designating manufacturing as the highest crime and possession as the lowest, with distribution in the middle. *Compare* § 30-6A-3(D) (criminalizing manufacturing as a second-degree felony), *with* § 30-6A-3(A) (criminalizing possession as a fourth-degree felony), *and* § 30-6A-3(B) (criminalizing distribution as a third-degree felony). Ballard argues that he should not be held accountable for the conduct of those unidentified actors who manufactured and distributed the files he ultimately possessed. The State rebuts that the 2001 amendment does not support Ballard's position that he is less culpable by merely possessing the pornography. *Compare* § 30-6A-3(A) (2001) (criminalizing possession as a fourth-degree felony), *with* § 30-6A-3(A) (1993) (criminalizing possession with intent to distribute as a fourth-degree felony).

**{26}**      Olsson argues that the Legislature intended a single unit of prosecution when it named Section 30-6A-3 "Sexual exploitation of children." Olsson posits that if the Legislature had intended multiple units of prosecution it would have named the statute "Sexual exploitation of a child," similar to the title of NMSA 1978, Section 30-6-1 (2009), "Abandonment or abuse of a child." Neither Olsson nor Ballard addresses the history of the Act.

**{27}**      This Court has held that the purpose of the Act is to protect children from the harm "that flows from trespasses against the child's dignity when treated as a sexual object." *Myers*, 2009-NMSC-016, ¶ 17 (internal quotation marks and citation omitted). We do not agree with Olsson and Ballard that possession should be treated as a victimless crime. Possession causes equal or greater harm than the original manufacture because it further disseminates the original trespass.

8

*See* David P. Shouvlin*, Preventing the Sexual Exploitation of Children: A Model Act*, 17 Wake Forest L. Rev. 535, 545 (1981) (explaining that "pornography poses an even greater threat to the child victim than does sexual abuse or prostitution[; b]ecause the child's actions are reduced to a recording, the pornography may haunt him in future years, long after the original misdeed took place.").

**{28}** In 1984, the New Mexico Legislature made the sexual exploitation of children a separate crime from the general child abuse provisions and included purpose in its definition of one of the five prohibited sexual acts: the "lewd exhibition of the genitals or pubic area . . . for the purpose of sexual stimulation." 1984 N.M. Laws, ch. 92, § 2(A)(5). *See generally State v. Rendleman*, 2003-NMCA-150, ¶¶ 41-42, 134 N.M. 744, 82 P.3d 554 (tracing the history of Section 30-6A-3). The definition was slightly modified in 1993 to read, "lewd and sexually explicit exhibition with a focus on the genitals or pubic area . . . for the purpose of sexual stimulation." 1993 N.M. Laws, ch. 116, § 1(A)(5). In 2001, the possession subsection, under which Olsson and Ballard are charged, was amended to proscribe possession alone without any language referencing distribution or intent to distribute. *See* 2001 N.M. Laws, ch. 2, § 2(A).

**{29}** The 2001 amendment supports the notion that the Legislature viewed possession alone, whether prohibited depictions were sold or not, as prohibited conduct. Nonetheless, the fact that prohibition of possession appears to be one of the main goals of the statute does not reveal the Legislature's intended unit of prosecution. Instead, this history draws attention to the fact that a unitary conduct analysis for possession is not likely what the Legislature intended because a defendant would have no incentive to stop downloading child pornography after the first image.

**{30}** We encounter another problem in determining the Legislature's intent when considering the sentencing disparities. A single count of possession under Section 30-6A-3(A) carries an eighteen-month basic sentence. NMSA 1978, § 30-18-15(A)(10) (2007) (prescribing a basic sentence of eighteen months imprisonment for a fourth-degree felony). The twenty-five counts in Ballard's case would result in a thirty-seven-and-a-half year basic sentence, and the sixty counts initially charged to Olsson would result in a ninety-year basic sentence. This punishment for possession of only two images would equal the minimum imprisonment sentence of three years for a defendant convicted of criminal sexual contact with a minor. *See* NMSA 1978, § 30-9-13(B) (2003). We cannot conclude that the Legislature intended this level of disparity.

**{31}** We conclude that the language, history, and purpose of Section 30-6A-3 do not inform us of the legislative intent on unit of prosecution. We next determine whether the acts of Olsson and Ballard were separated by sufficient indicia of distinctness to justify multiple punishments under the same statute.

**C.      The *Herron* test of distinctness does not apply in possession cases**

**{32}** In determining distinctness, the Court may apply the six *Herron* factors: (1) time between criminal acts, (2) location of the victim during each act, (3) existence of any intervening events, (4) distinctions in the manner of committing the acts, (5) the defendant's intent, and (6) the

number of victims. *Herron*, 1991-NMSC-012, ¶ 15.

**{33}**    Olsson contends that because legislative intent concerning the unit of prosecution is unclear, this Court must engage in a *Herron* factor analysis to determine whether the offenses are sufficiently distinct. Olsson did not provide relevant evidence about his possession to the Court of Appeals because such evidence was unavailable pretrial at the time of Olsson's interlocutory appeal; therefore the Court of Appeals was unable to apply the *Herron* factors. *Olsson I*, 2008-NMCA-009, ¶ 10. We conclude that the record posttrial is also devoid of facts that would allow us to consider the distinctness of Olsson's acts.

**{34}**    However, Ballard's case has a more sufficient factual background to engage in a *Herron* distinctness analysis, but the parties did not directly address *Herron*. Instead, the parties engaged in a general discussion on distinctness and the rule of lenity.

**{35}**    The State argues that the Court of Appeals erred in reducing the twenty-five charges to five because reliance on the download dates is not rooted in the language or purpose of the statute. The State asserts that it proved that Ballard possessed twenty-five separate and distinct computer images of child pornography at twenty-five separate and distinct times. Thus Ballard should be charged with twenty-five counts.

**{36}**    Ballard cites *State v. Quick*, 2009-NMSC-015, ¶ 20, 146 N.M. 80, 206 P.3d 985, for the proposition that the actus reus for possession offenses is defined by the moment the evidence is seized from a defendant's possession. Ballard argues that his possession was a single actus reus because his conduct has been consistently alleged as occurring on one specific date. Finally, Ballard asserts that the Court of Appeals' recognition of the possession of a "bundling of images" is properly rooted in the statutory inclusion of media inherently containing multiple images.

**{37}**    This case is distinguishable from *Quick*, which concluded "that the separate crimes of possession and possession with intent to distribute were intended by the New Mexico Legislature to apply in the alternative when based on a single act of possession." *Id.* ¶ 2. *Quick*, an appeal based on a claim that multiple punishments was a double jeopardy violation, provided that "[t]he problem of multiple punishments arises in either of two situations: when a defendant claims to have been convicted (1) of several different crimes or (2) of multiple counts of the same crime, despite legislative intent to impose fewer punishments under the circumstances." *Id.* ¶ 8. *Quick* dealt with the former, also known as double description. *Id.* This case addresses the latter, commonly known as a unit of prosecution case. In a double description case the primary inquiry is "whether the facts presented at trial establish that the jury *reasonably* could have inferred independent factual bases for the charged offenses." *Id.* (internal quotation marks and citation omitted). The relevant inquiry in a unit of prosecution case "is whether the legislature intended punishment for the entire course of conduct or for each discrete act." *Swafford*, 1991-NMSC-043, ¶ 8.

**{38}**    Additionally, *Quick* dealt with possession of controlled substances. 2009-NMSC-015,

10

¶ 1. A defendant who is found guilty of possession of controlled substances receives varying sentences depending on the quantity, type of the substance, and the defendant's first-time offender status. *See* NMSA 1978, § 30-31-23 (2011). There is no such sentencing system in place for possession of child pornography. *See* § 30-6A-3(A); § 31-18-15(A)(10).

**{39}** This reveals a problem with attempts to determine whether conduct in a child pornography possession case is distinct under *Herron*: The *Herron* factors are specifically tailored to a case where a defendant has direct contact with a victim. *See Herron*, 1991-NMSC-012, ¶ 1 (criminal sexual penetration); *State v. Garcia*, 2009-NMCA-107, ¶ 6, 147 N.M. 150, 217 P.3d 1048 (battery); *State v. Boergadine*, 2005-NMCA-028, ¶ 1, 137 N.M. 92, 107 P.3d 532 (fraud). Possession cases do not so neatly fit the *Herron* mold because it is unclear when each of the factors would apply and the factors are inconclusive when they do apply. For instance, time between criminal acts, location of the victim during the acts, existence of any intervening events, and the defendant's intent could apply specifically to when a defendant downloaded an image or each time he viewed them. It is difficult to ascertain a defendant's intent at the time of downloading or at the time of viewing the images. The location of the victim during a download or viewing is not relevant. The number of victims could possibly be established, but the circumstance of multiple victims can exist from possession of a single videotape or a single computer diskette as described in Section 30-6A-2(B)(1). Additionally, Section 30-6A-3(A) specifically recognizes that the medium may depict "one or more" child participants.

**{40}** Further, Justice Ransom*,* who authored *Herron*, stated the following in *State v. Brooks*:

> We believe our more recent analysis and discussion in *Herron v. State*, 111 N.M. 357, 805 P.2d 624 (1991), is applicable to rape, sodomy, and sexual assault or penetration cases. In sex crime cases, the jury looks at several factors to determine if each contact or penetration is part of the same act or is a separate act, *Herron*, 111 N.M. at 361, 805 P.2d at 628, while in larceny and embezzlement cases, the jury looks to see if the defendant's *intent* was to achieve a single fraudulent scheme or plan through the commission of several acts, *see Allen*, 59 N.M. at 141, 280 P.2d at 299; *Pedroncelli*, 100 N.M. at 680, 675 P.2d at 129.

1994-NMSC-062, ¶ 10 n.1, 117 N.M. 751, 877 P.2d 557. Justice Ransom's affirmation that the *Herron* factors were originally designed for cases where there is direct contact between the defendant and the victim further convinces us that the *Herron* factors do not apply in possession cases.

**{41}** In *Ballard*, the Court of Appeals seems to rely on the timing factor to conclude that the five specific download dates for each bundle of child pornography resulted in five counts instead of the original twenty-five. 2012-NMCA-043, ¶ 29. The Court of Appeals struggled to apply the *Herron* factors, however, asking "[w]hen, if at all, do factors such as timing, location, sequencing, and intervening events, come into play?" *Id.* ¶ 26.

11

**{42}** While it would seem logical in the context of *Herron* for the Court of Appeals to determine counts based on download dates, the State is also correct in its assertion that download dates are not included in the statutory language nor alluded to in the purpose and history. This problem, along with the impracticability of how to apply the *Herron* factors to Olsson and Ballard's cases, further illustrates the difficulty in applying the *Herron* factors to possession cases. Therefore, we hold that the *Herron* factors are not applicable in possession cases and that the indicia of distinctness factors do not determine the unit of prosecution.

## D.    The rule of lenity applies

**{43}** If there is no distinctness to the acts charged, then the rule of lenity applies, meaning "doubt will be resolved against turning a single transaction into multiple offenses." *Herron,* 1991-NMSC-012, ¶ 14. This Court has also held that:

> [T]he rule of lenity, which counsels that criminal statutes should be interpreted in the defendant's favor when insurmountable ambiguity persists regarding the intended scope of a criminal statute, may not be applied to defeat the apparent intent of the Legislature, as manifested by the language and structure, legislative history, and motivating policies of [a] statute.

*State v. Morales*, 2010-NMSC-026, ¶ 13, 148 N.M. 305, 236 P.3d 24 (second alteration in original) (internal quotation marks and citation omitted).

**{44}** Olsson and Ballard both argue that the rule of lenity should apply and that only a single count of possession should be imposed. The State argues that in order for the rule of lenity to apply, there must be "grievous ambiguity" in the statutory language, which the State urges does not exist in this case.

**{45}** We hold that the rule of lenity applies. The statutory language is insurmountably ambiguous and we do not discern any distinctness in the acts charged. Since Section 30-6A-3(A) was enacted in 1984 and amended in 2001, significant and rapid technological developments have occurred. Digital storage has become widely available and can store massive amounts of data. We respectfully recommend that the Legislature revise Section 30-6A-3(A) to reflect modern advances in technology and clarify the intended unit of prosecution.

**{46}** This Court in *Swafford* noted that "[t]he case law is replete with failed attempts at judicial definitions of the same factual event." 1991-NMSC-043, ¶ 27. That is precisely the situation in this case, and because "an intent to punish separately [also cannot] be found through application of the canons of construction set forth above, lenity is indicated." *Id.* ¶ 34. Therefore, we hold that the rule of lenity requires us to interpret Section 30-6A-3(A) in Olsson and Ballard's favor.

## IV.    CONCLUSION

12

**{47}** We hold that the statutory language of Section 30-6A-3(A) is ambiguous and that the *Herron* factors are not applicable in possession cases. Olsson and Ballard can each only be charged with one count of possession. The Court of Appeals opinions in *Olsson* and *Ballard* are reversed and these cases are remanded to the trial court for proceedings in accordance with this opinion.

**{48}** **IT IS SO ORDERED.**

 

_____

**PETRA JIMENEZ MAES, Justice**

**WE CONCUR:**

_____

**BARBARA J. VIGIL, Chief Justice**

_____

**RICHARD C. BOSSON, Justice**

_____

**CHARLES W. DANIELS, Justice**

**EDWARD L. CHÁVEZ, Justice (dissenting).**

**CHÁVEZ, Justice (dissenting).**

**{49}** Because I conclude that the unit of prosecution for possession of child pornography in the Sexual Exploitation of Children Act, NMSA 1978, §§ 30-6A-1 to -4 (1984, as amended through 2007) (the Act), is ascertainable by reference to the language and purposes of the Act, I respectfully dissent.

**{50}** It is not unusual for the Legislature to use general language when defining a crime. General language is to be expected because legislation is often written to balance competing policy interests. It may also be desirable for the Legislature to elect to use language that is general or imprecise to accommodate the uncertainty of future application of a statute, while using language specific enough to guide courts in a particular direction. Countless published and unpublished appellate opinions discuss the approach to interpreting general language in a statute with the court's ultimate goal being to determine the intent of the Legislature. Rules of statutory construction, provided both by the Legislature in the Uniform Statute and Rule Construction Act, *see* NMSA 1978, § 12-2A-1 to -20 (1997), and by the New Mexico courts in case law, assist us in our search for legislative intent. In a general sense, courts ask "What would a reasonable legislator have intended the statute to mean, considering the language, history, and purposes of the statute?" After courts hypothesize legislative intent, they must explore the consequences of that interpretation to determine whether the consequences advance

13

or hinder the intent of the legislation, choosing the interpretation that advances the legislative intent.[1]  This approach offers the assurance that courts are attempting to further the intent of the Legislature and not the policies of the courts.

**{51}**     A court's analysis is no different when it is determining the unit of prosecution in a criminal statute.  In this case, the question is "What would a reasonable legislator have intended the unit of prosecution to be for possession of child pornography under the Act, considering the language, history, and purposes of the legislation?"  If reasonable doubt persists regarding the intended unit of prosecution, the rule of lenity requires courts to interpret the unit to be a single transaction and not multiple offenses.  *Herron v. State*, 1991-NMSC-012, ¶ 14, 111 N.M. 357, 805 P.2d 624.

**{52}**     Section 30-6A-3(A) provides, in relevant part:

> It is unlawful for a person to intentionally possess any obscene visual or print medium depicting any prohibited sexual act or simulation of such an act if that person knows or has reason to know that the obscene medium depicts any prohibited sexual act or simulation of such act and if that person knows or has reason to know that one or more of the participants in that act is a child under eighteen years of age.

**{53}**     I conclude that the Legislature intended the unit of prosecution for possession of child pornography to be based on the number of different children depicted participating in distinct prohibited sexual acts as defined in Section 30-6A-2(A), or the same child or children participating in distinct prohibited sexual acts.  I am persuaded that this is the unit of prosecution intended by the Legislature because of the language in the statute that requires proof that the possessor knew or should have known that the obscene medium depicts a prohibited sexual act or simulation of such act—one of the five acts defined in Section 30-6A-2(A)(1)-(5)—and that the possessor knew or should have known that one or more of the participants in that act is a child under eighteen years of age.  Thus, the medium is the set with the subset including a prohibited sexual act and the defendant's required knowledge that at least one of the participants in the prohibited sexual act is a child.

**{54}**     The purpose of the Act is also instructive.  I agree with the majority that possession of a medium depicting child pornography is not a victimless crime.  *See* majority op. ¶¶ 24, 27. The very purpose of the Act is to protect against the sexual exploitation of children.  As we recently stated in *State v. Myers*, 2009-NMSC-016, ¶ 17, 146 N.M. 128, 207 P.3d 1105, "Child pornography is particularly harmful because the child's actions are reduced to a recording which could haunt the child in future years, especially in light of the mass distribution system for child pornography."  (Internal quotation marks and citations omitted.)  The Act recognizes that

---

[1]For example, courts avoid a construction that will lead to absurd results.  *See State v. Padilla*, 1997-NMSC-022, ¶ 6, 123 N.M. 216, 937 P.2d 492.

manufacturing and distribution of child pornography is harmful to the child or children who are the subjects of the pornography, but the mere possession or control of child pornography results in continuing victimization because such material is a permanent record of an act or acts of sexual abuse of a child. Each time such material is shown or viewed, the child is harmed. The language of the Act evinces legislative awareness that a law banning the manufacturing and distribution of child pornography is insufficient to stop continuing harm to the child. Therefore, the Legislature deemed it necessary to proscribe the possession of any child pornography for the protection of the privacy and health of the individual children whose sex abuse has been captured in a visual or print medium.

**{55}** In my reading of the statute, if the defendant possesses a medium depicting the same child participating in the same prohibited sexual act, i.e., masturbation, the unit of prosecution permits only one count. If the defendant possesses a medium depicting the same child participating in two distinct prohibited sexual acts, i.e., sexual intercourse in some images and masturbation in the other images, the unit of prosecution permits two counts of possession. If the defendant possesses a medium of three children separately engaged in the same type of prohibited sexual act, the unit of prosecution permits three counts because there are three different victims depicted separately. The Legislature also intended that courts treat as a continuous transaction a medium depicting one or more children performing the same prohibited sexual act. Thus, if a defendant possesses a medium containing multiple images of a group of children engaged in the same prohibited sexual act, the unit of prosecution only permits one count. If the medium possessed by the defendant includes an image of a different group of children, the unit of prosecution permits an additional count. In my opinion, the district court in *State v. Ballard* correctly identified the unit of prosecution when the judge concluded that the twenty-five separately charged images each involved a different child victim and a distinct act. 2012-NMCA-043, ¶ 20, 276 P.3d 976, *cert. granted*, 2012-NMCERT-005.

**{56}** I find it difficult to conclude that the Legislature did not intend multiple punishments when a defendant possesses media depicting a different child or different children engaged in distinct prohibited sexual acts. Each child who is recorded by video or still photograph(s) while participating in a prohibited sexual act is exploited at the time of his or her participation, yet each child's victimization extends beyond the walls where they were abused when they are photographed or videotaped. The child cannot know who will look at the photographs or videotapes and for how long the photographs and videotapes will circulate. This was our concern in *Myers*, and the majority opinion echoes this concern in paragraph 27, which states that " 'pornography poses an even greater threat to the child victim than does sexual abuse or prostitution[;b]ecause the child's actions are reduced to a recording, the pornography may haunt him in future years, long after the original misdeed took place.' " (quoting David P. Shouvlin, *Preventing the Sexual Exploitation of Children: A Model Act*, 17 Wake Forest L. Rev. 535, 545 (1981)).

**{57}** I recognize that modern technology, including computers, the internet, and digital cameras, contributes to a person's ability to manufacture, distribute, and possess large quantities of child pornography. However, I am not persuaded that simply because it is now easier and

15

faster to sexually exploit more children, the Legislature could not have intended multiple punishments in the Act when different children are engaged in distinct prohibited sexual acts, or the same child or children are depicted participating in distinct prohibited sexual acts. As I previously indicated, at times it is desirable for a legislature to use general language because it is difficult to predict what future circumstances might result in multiple violations of the same statute. Despite such general language, I remain confident that the language as written is intended to pyramid the punishment of a defendant who possesses media depicting different children participating in distinct prohibited sexual acts, or the same child or children participating in distinct prohibited sexual acts.

**{58}** Interestingly, the unit of prosecution for manufacturing an obscene visual or print medium depicting child pornography is each image. Section 30-6A-3(D); *State v. Leeson*, 2011-NMCA-068, ¶ 17, 149 N.M. 823, 255 P.3d 401, *cert. denied*, 2011-NMCERT-005, 150 N.M. 667, 265 P.3d 718. Manufacturing includes the transfer of pornographic images of children from a computer to an external drive. *State v. Smith*, 2009-NMCA-028, ¶ 15, 145 N.M. 757, 204 P.3d 1267, *cert. quashed*, 2009-NMCERT-012, 147 N.M. 601, 227 P.3d 91. This Court chose not to grant certiorari in *Leeson* and we quashed certiorari in *Smith*. Although our actions should not be interpreted as an official endorsement of the *Leeson* and *Smith* opinions, these cases remain good law.

**{59}** Despite *Leeson*, I remain persuaded that the "reasonable legislator" did not intend each and every image or video medium to be the unit of prosecution for possession. Requiring proof that the defendant possessed the medium, when the defendant knew or should have known that the medium depicted a child or children engaged in a prohibited sexual act, is the additional element not required for manufacturing that persuades me that the unit of prosecution is different for possession. In addition, it would have been a simple matter for the Legislature to have stated that "It is unlawful for a person to intentionally possess any obscene *image or video medium* depicting . . . ." In the alternative, the Legislature could have simply written that "each and every image or video clip shall be deemed a separate offense" as it did in NMSA 1978, Section 57-5-8 (1933) ("Each and every picture furnished, received or exhibited in violation of any of the provisions of this act shall be deemed a separate offense.").

**{60}** I also conclude that the date of downloading such media cannot be the unit of prosecution because the downloading date is not reflected in the language, history, or purpose of the legislation. Majority op. ¶¶ 35, 42. Whether the defendant's conduct is unitary depends entirely on what conduct the Legislature intended to proscribe, and the language in the statute does not divide possession based on when the medium was obtained.

**{61}** I am also not convinced that the difference in punishment between possession of child pornography and criminal sexual contact of a minor leads to the rule of lenity. Majority op. ¶¶ 30, 43. If a defendant has criminal sexual contact with more than one minor, the defendant is punished multiple times. Each child is a victim. If a defendant has criminal sexual contact with the same minor on more than one date, or in different geographic locations, the defendant is subject to multiple punishments. *State v. Salazar*, 2006-NMCA-066, ¶ 30, 139 N.M. 603, 136

16

P.3d 1013. Therefore, the child is a victim multiple times. Indeed, application of the *Herron* factors, 1991-NMSC-012, ¶ 15, could result in multiple punishments of a defendant who touches the intimate parts of a minor when the evidence supports a finding of distinct touching of more than one protected area. *State v. Williams*, 1986-NMCA-122, ¶ 9, 105 N.M. 214, 730 P.2d 1196. The child is considered to be a victim multiple times.

**{62}** The consequences of the unit of prosecution that I have hypothesized is that a defendant who possesses a medium containing multiple images of different children engaged in distinct prohibited sexual acts, or the same child or children participating in distinct prohibited sexual acts, is subject to multiple convictions, which might result in an extraordinarily lengthy sentence. This consequence advances what we have interpreted to be the purpose of this legislation, which is to deter the continued victimization of a child who is the subject of child pornography. As noted by the majority in the last sentence of paragraph 29: "Instead, [prohibition of possession] draws attention to the fact that a unitary conduct analysis for possession is not likely what the Legislature intended because a defendant would have no incentive to stop downloading child pornography after the first image." To interpret Section 30-6A-3(A) to be a continuous transaction despite different child victims and distinct acts will not have the deterrent effect intended by the Legislature.

**{63}** I conclude that the unit of prosecution for possession of child pornography is based on the number of different child victims participating in distinct prohibited sexual acts, or the same child or children participating in distinct prohibited sexual acts. As to each child victim, possession is a continuing course of conduct if the child is depicted performing the same prohibited sexual act resulting in one unit of prosecution. Similarly, when more than one child is depicted performing the same prohibited sexual act, the Legislature treats the possession as a continuing course of conduct resulting in one unit of prosecution until a different child becomes a subject of the prohibited sexual act.

**{64}** For the foregoing reasons, I respectfully dissent.

_____
**EDWARD L. CHÁVEZ, Justice**

**Topic Index for *State v. Olsson*, Nos. 33,226/33,565**

**APPEAL AND ERROR**
Standard of Review

**CRIMINAL LAW**
Sexual Exploitation of Children

**STATUTES**
Interpretation
Legislative Intent
Rules of Construction